IN THE MATTER OF THE ESTATE OF L. A. NEIL, DECEASED. JESSE L. NEIL, ADMR., JESSE L. NEIL, PERSONALLY, ANGIE I. KING AND EDNA A. TORRENCE *v.* ELMO NEIL.

(226 Pac. 439.)

Wills—Transcript of Testimony in County Court Held . Filed in Circuit Court, Although No Technical Indorsement of Filing.

1. Where transcript of testimony taken in County Court in will contest was in possession of Circuit Court on trial 'without objection, and: was considered by circuit judge as though properly filed, *held,* that transcript was actually on file in Circuit Court, irrespective of any technical indorsement of filing.

Wills—Evidence Held Sufficient to Show Testamentary Capacity.

2. Evidence that testator was a man of large affairs, owner of considerable . property, and director of a bank *held* sufficient to show *competency* to make testamentary disposition of his property by will.

**Wills—Objection as to Testamentary Capacity Held Waived Where not Made on Trial.**

3. Where no attempt was made to impeach testator's mental capacity on trial, an objection that he was incompetent to make will may be deemed waived on appeal.

**Wills—Disposition of Property by "Gift and Assignment" Held Testamentary in Nature.**

4. An instrument entitled "Gift and Assignment," which was to take effect only on death, of maker, and conveyed all his property of which he might die scised and possessed, and provided for survivorship of three principal beneficiaries, and payment of funeral expenses, and delivery of deeds to real property to grantees named therein, *held* testamentary in nature.

**Wills—Character of Instrument as Will not Affected by Name Given to It.**

5. Character of an instrument as will is not affected by name that maker gives instrument.

**Wills—Validity of Will must be Tested Exclusively by Statute.**

6. The validity of the execution of a will must be tested exclusively by statute, and not by common law.

**Wills—Evidence Held to Show That Testamentary Instrument Signed by Witness in Testator's Presence.**

7. Evidence *held* to show that a testamentary instrument was signed by witnesses in testator's presence, at his request, as required by Section 10095, Or. L.

**Wills—Signing by Witnesses in Each Other's Presence and Declaration by Testator of Character of Instrument not Required.**

8. Section 10095, Or. L., providing for attestation of wills does not require witnesses to sign in the presence of each other, nor need testator declare instrument his last will and testament, it being sufficient if he actually signs it and witnesses attest his signature at his request, though they are unaware of instrument's contents.

**Wills—Temporary and Recall Character One of Principal Characteristics of Will.**

9. One of the principal characteristics of a will as distinguishing it from other conveyances is that it is temporary and subject to recall or change by person executing it.

**Wills—Testator's Unjust Disposition of His Property Does not Invalidate Will.**

10. That testator's disposition of his property was palpably unjust is not ground for setting it aside.

**Deeds—Essentials of Deeds Provided for in Will Stated.**

11. Where a will provides for delivery of deeds to certain beneficiaries, it is unnecessary that they be executed with same formalities as instrument referring to them.

**Deeds—Validity of Deeds to Certain Beneficiaries Provided for in Will Held Immaterial.**

12. Where an instrument called "Gift and Assignment," and providing for delivery of deeds to certain beneficiaries, was sufficient in itself to convey title to deceased's property, validity of such deeds was immaterial.

From Jackson: F. M. CALKINS, Judge.

Department 1.

This is an appeal from the Circuit Court of Jackson County in the matter of the probate of the alleged will of L. A. Neil, deceased. The document, or documents, purporting to be a will were probated in common form in the County Court of Jackson County and thereafter, on the fifteenth day of April, 1920, Elmo Neil, a son of the deceased, filed his petition to set aside the probate and to cancel the letters testamentary. Thereafter, in May, 1920, the administrator, Jesse L. Neil, and Angie I. King and Edna A. Torrence, the other heirs to the estate, filed their answer to the petition, in which they alleged that the instrument entitled "Gift and Assignment," together with five additional instruments hereinafter mentioned, constituted the last will and testament of the deceased, and asked for a hearing and to have all of said instruments re-probated as a will. Thereafter Elmo Neil filed his reply and the matter came on for hearing before the County Court of Jackson County, and as a result of the hearing the court held that the instruments presented for probate did not constitute the last will and testament of the deceased and rendered a decree in favor of the contestant to that effect. The proponents then appealed to the Circuit Court of Jackson County, which court affirmed the decree of the County Court, and from that decree an appeal is taken here.

The instrument presented for probate and upon which a hearing was had is as follows:

"Know All Men by These Presents, That I, L. A. Neil, of the County of Jackson, State of Oregon, for and in consideration of love and affection and value received, have given, granted and assigned and set over and by these presents do give, grant, assign and set over to Jesse L. Neil, Edna A. Torrence and Angie Neil, all children of mine and all heirs-at-law of mine, the following property, share and share alike, to each an undivided third, to-wit:

"Twenty-five shares of the capital stock of the Citizens Bank of Ashland, successor to the Citizens Banking and Trust Company of Ashland, Oregon, and represented by stock certificates.

"Also the shares of the capital stock of Pacific States Fire Insurance Company of Portland, Oregon, represented by stock certificate No. 84.

"Also that one certain note and real estate mortgage, executed by Ermay L. Hosley to me, bearing date February 24th, 1914, upon Lots 22 and 23 and the north 50 feet of Lot 21 of Block O, Railroad Addition to the City of Ashland, which mortgage is recorded in Book 35 at pages 144 and 145 of the Mortgage Records of Jackson County, Oregon.

"Also that certain other note and mortgage (said mortgage being a warranty deed to me from Amos C. Nininger and wife, and a deed back from me to them in escrow in said bank), executed by said Nininger and wife upon the property described in said deed, which mortgage is recorded in Book 102 at page 100 of the Deed Records of said County. Also all other personal property of whatsoever kind or nature that I may die seized or possessed, and if any of the above notes should be paid off before my death or if any of said notes or stock should be in any manner transferred before my death and the proceeds thereof become in any manner a part of my assets before my death, the said proceeds are to be and become the property of said children, it being my intention hereby to give, grant and trans-

fer all the property, both real and personal, of whatsoever nature, of which I may die seized and possessed to the above named three children; provided, if any one or more of my said three children should die before I do, I give, grant and transfer the said property to the survivor or survivors of said three children. Provided further, that before the division of said property is made the expense of my last sickness, all my just debts and funeral expenses and the sum of $50.00 to my son Elmo Neil shall first be paid—he has heretofore had his share of my property.

"The deeds to the real estate enclosed herewith are to be delivered to the grantees named therein upon my death.

"Witness my signature this —— day of July, 1916.

"L. A. Neil.

"In the presence of
          "L. A. Roberts.
          "G. C. McAllister.

"State of Oregon,
      County of Jackson.

"On this —— July, 1916, before me, a Notary Public in and for said County and State, personally appeared the above named L. A. Neil, personally known to me to be the identical person whose name is subscribed and who executed the above and foregoing instrument, and he acknowledged to me that he executed the same freely and for the uses and purposes therein named.

"[N. S.]                    G. C. McAllister,
          "Notary Public for Oregon.
"My commission expires February 3, 1917."

In addition there were five deeds, duly executed, purporting to convey, and in form sufficient to convey, to Jesse L. Neil, Edna A. Torrence and Angie I. King certain real estate owned by the deceased, and in fact embracing all of the real property owned

by him.   There is no question as to the regular execution of these deeds.

All of these instruments, including the document entitled "Gift and Assignment," were inclosed in an envelope and deposited with the Citizens Bank of Ashland, Oregon, with the following instructions by deceased:

"To the Citizens Bank of Ashland, Oregon:

"Upon my death you are instructed to open this envelop and deliver the papers and things herein enclosed according to the instructions herein enclosed, and I hereby reserve the right to withdraw this envelop at any time during my life.

"L. A. NEIL."

Upon the death of L. A. Neil the instrument called "Gift and Assignment" was, as before stated, probated in common form, but upon objections by the contestant the "Gift and Assignment" and the five deeds were presented for re-probate as constituting the last will and testament of L. A. Neil, deceased.

REVERSED.

For appellants there was a brief over the names of *Mr. H. D. Norton* and *Messrs. Newbury & Newbury,* with oral arguments by *Mr. Norton* and *Mr. Gus Newbury.*

For appellants Angie I. King and Edna A. Torrence there was a brief over the name of *Messrs. Platt & Platt, Montgomery & Fales,* with an oral argument by *Mr. Harrison G. Platt.*

For respondent there was a brief over the name of *Messrs. Reames & Reames,* with an oral argument by *Mr. Charles Reames.*

McBRIDE, C. J.—1. A preliminary question was raised as to the validity of the appeal from the County Court to the Circuit Court and from the Circuit Court here, on the ground that the testimony taken before the County Court was not filed with the clerk of the Circuit Court and was not certified up by the clerk of the Circuit Court upon the appeal from that court to this. The whole proceedings show that the transcript of the testimony was in the possession of the Circuit Court on the trial, and that no objection was made by the attorneys for the contestant at the time, and that it was considered by the circuit judge as though it had been properly filed. The affidavit of the attorneys for proponents satisfies us that the clerk of the Circuit Court had instructions to file it in that court and that, while his file-marks were probably not put upon it, it was actually so filed; the clerk of the Circuit Court being also *ex-officio* clerk of the County Court. We think that, irrespective of any technical indorsement of filing, the transcript was actually on file in the Circuit Court and was so treated by all the parties at the trial, and we shall so treat it here.

The main question here is as to the sufficiency of the execution of the instrument called "Gift and Assignment." Briefly stated, the objections by contestant are: (1) that the instrument attempted to be probated as a will was not the will of the decedent; (2) that it was not a will at all; (3) that it was never intended as a will by L. A. Neil, deceased; (4) that it was never declared by him to be his last will and testament; (5) that it was never executed by him in the presence of witnesses as required by law; (6) that at the time of the execution of the instrument he had no intention of execut-

ing a will; (7) that at that time he was not compe-
tent to make by will testamentary disposition of his
property.

2, 3. Taking the last ground of contest first, we
will say that it appears plainly from the testimony
that the deceased was perfectly competent to make
a will.  He was a man of large affairs, the owner of
considerable property, had been a director in the
bank at Ashland, and no attempt to impeach his
mental capacity was made at the trial, so the seventh
objection may be deemed to be waived.

4, 5. The next question is whether the instrument
entitled "Gift and Assignment" is in its nature tes-
tamentary. This appears so clearly that it can
hardly be the subject of discussion.  It is not a pres-
ent conveyance, because on its face it is to take
effect only upon the death of the grantor.  It pur-
ports to convey all the property of the deceased,
both real and personal, of which the deceased might
die seized and possessed.  It provides that, if one of
the three beneficiaries should die before the testa-
tor, the share of such one should go to the survivor
or survivors of the three principal beneficiaries.  It
provides that the funeral expenses shall be first
paid.  It provides for the payment to Elmo Neil
of the sum of $50, with the statement that he had
theretofore had his share of the testator's property.
It also provides that the deeds to the real estate
should be delivered to the grantees therein named.
In short, it has every characteristic of a will, except
that it is not so designated.  We take it to be clearly
the law that it makes no difference what the maker
of the instrument calls it, so long as it. evinces the
intention of disposing of his property after his
death, and that it is a will if it is accompanied by

111 Or.—19

the formalities necessary to make it such: *Beebe* v. *McKenzie,* 19 Or. 296 (24 Pac. 236); *Sappingfield* v. *King,* 49 Or. 102 (89 Pac. 142, 90 Pac. 150, 8 L. R. A. (N. S.) 1066); *Burlington University* v. *Barrett,* 22 Iowa, 60 (92 Am. Dec. 376); *Crocker* v. *Smith,* 94 Ala. 295 (10 So. 258, 16 L. R. A. 576).

As remarked by Mr. Schouler (Schouler's Wills and Administration, Sections 265 and 266):

"No particular testamentary form can be insisted upon, provided the maker of the instrument intended it to operate only at or after his death, and the instrument be executed with such formalities as local legislation may have imposed. Testamentary intention, in other words, or rather an intention whose effect is to create a testament, entitles the instrument to probate, however inartificial its form, subject only to such restraints as legislation may have seen fit to impose, for the better prevention of fraud and perjury. (Sec. 265.)

"The effect of such informal instrument being to give a posthumous destination to the maker's property, any contrary title or designation which he may have given does not prevent the court from treating it as a will. * * " (Sec. 266.)

6. It only remains, therefore, to consider whether the instrument was executed with the formalities necessary under our statute to constitute a will. Our statute is very liberal in regard to the formalities required to make a will, and the validity of the execution of it must be tested exclusively by the statute and not by common-law rule. Section 10095, Oregon Laws, provides:

"Every will shall be in writing, signed by the testator, or by some other person under his direction, in his presence, and shall be attested by two or more competent witnesses, subscribing their names to the will, in the presence of the testator."

7. We think the evidence greatly preponderates in favor of the position of proponents, that this will was signed by the testator and witnessed by Mr. G. C. McAllister and Mr. L. A. Roberts, in the presence of the testator, and at his actual or implied request. Mr. McAllister testified as follows:

"Q. State whether or not Mr. Neil requested you and the other witness to sign these instruments as witnesses. * * A. He requested me to sign as a witness; I can't say as to the other witness.

"Q. The other witness—was the other witness present and did he sign in Mr. Neil's presence? A. It is my recollection that he did.

"Q. And did Mr. Neil sign in the presence of the witnesses, do you remember? A. He signed in my presence, I am sure, and I think in the presence of the other witness. I might say I—perhaps it was like this: That we were in an adjoining room to the one that Mr. Roberts was in, and that I simply called on Mr. Roberts and told him that Mr. Neil was signing certain papers.

"Q. In whose presence did you say that? A. In the presence of Mr. Neil and Mr. Roberts.

"Q. And Mr. Roberts signed in that way, did he? A. Yes, he signed in that way."

Part of the testimony of Mr. Roberts is as follows:

"Q. Where was your office with reference to Mr. McAllister's? A. Well, it was adjoining.

"Q. With open door between? A. With open door between. * *

"Q. Well, now, I am handing you proponents' exhibits 1, 2, 3, 4, and 5, and I want you to look at the signatures there as witnesses, and state whether or not the signature 'L. A. Roberts' to each one of those instruments is your individual signature. A. My signature is there as a witness in each of those exhibits.

"Q. Do you recall the circumstances of your signing them? A. I do not.

"Q. Mr. Neil undoubtedly was present at the time you signed those instruments? A. Oh, yes, he surely was or I would not have signed as a witness.

"Q. Now, in regard to exhibit number 6, [which is the instrument called "Gift and Assignment"] I hand you that and you will notice the name 'L. A. Roberts' there as a witness; see whether or not that is your signature. A. It is.

"Q. And was Mr. Neil present at the time when you signed that as a witness? A. He was. * *

"Q. Do you recall any other circumstances in connection with the instruments at all excepting the fact that you had signed them? A. Now, I am not sure that this is the instrument, but I think it is, very probably this is the one in which I have a recollection, that Mr. Neil and Mr. McAllister came into my office together. I was busy at the time and had other parties in, and just hurriedly went to the desk and signed the name. Now, I do not remember whether Mr. Neil had signed them at that time or had previously signed before he came into my office, but I have a recollection of signing such an instrument.

"Q. But he either signed that in your presence, or indicated to you that it was his signature? A. Yes, either that, or else he brought it to me and personally told me that he had signed it."

Mr. Roberts was subjected to a long and searching cross-examination but the whole trend of his testimony is to show that in Neil's presence, and either at his request or at the request of Neil's attorney made in his presence, he signed as a witness, and this fact seems better established than is very often the case where witnesses to a will are called to identify their attestation years after the event happened. In this case, being about three years after the execution of the will, we think it very clear that this instrument was signed by these witnesses in the presence of the testator.

8. It is not necessary under our statute that the witnesses should sign in the presence of each other; nor is it necessary that the testator should declare the instrument to be his last will and testament. It is sufficient if he actually signs it and the witnesses attest his signature at his request, even though they may not have the least idea of the purport or contents of the instrument which they have so subscribed. We think the execution of the instrument was sufficiently proven to justify its admission to probate: *Mead* v. *Trustees, etc.*, 229 Ill. 526 (82 N. E. 371, 11 Ann. Cas. 426, 14 L. R. A. (N. S.) 255, and note).

9. It is urged that this was evidently a mere temporary matter, but that is the case with all wills. Whenever an instrument ceases to be temporary or ambulatory it ceases to be a will and becomes either a conveyance or a gift *causa mortis,* which in this case would be invalid because not delivered and the testator having retained control over it. Indeed, the fact that it is temporary and subject to recall or change by the person executing it is one of the principal characteristics of a will as distinguished from conveyances of a different nature.

10. It is also urged that the disposition of the property is palpably unjust because of the fact that the contestant, Elmo Neil, is given only $50 out of a very large estate, and it also appears in the testimony that, while he may have been indebted to his father at the time the instrument was executed, he had subsequently paid the debt, and that, as a matter of fact, he had not had any share in the estate at the time of his father's death. But this fact would not alter the bequest. The property was that of the testator, and however strong a moral claim the contestant had to a share of it, and however unjust the

disposition may have been, it was within the power of the testator to make that disposition. A man has just as much legal authority to make an unjust will as to make a fair and equitable one, and wills have never been set aside under our law because they were apparently unjust. In the present instance, taking contestant's statement to be the fact, he has suffered a hardship similar in kind to that detailed in *Re Wilson's Estate,* 85 Or. 604 (167 Pac. 580), in which, by the delay of a testator in making a change in his will to correspond with changed circumstances in regard to his property, a valuable legacy was lost to a party who was probably morally entitled to it.

11, 12. The instrument purporting to be a gift and assignment being, as we hold, a will, it is sufficient in itself to convey the property to the three legatees named without the interposition of a deed, but being referred to in the will, the deeds may properly be treated as part of it. And it is not necessary that they should be executed with the same formalities as the instrument which refers to them; that is, if they were executed merely as deeds such execution is sufficient. But in view of the fact that the instrument called "Gift and Assignment" in itself is sufficient to convey the title to deceased's property, the validity or invalidity of the deeds is a matter of no consequence in the consideration of this case.

The decree of the Circuit Court will be set aside and a decree will be entered here that the instrument entitled "Gift and Assignment" is the last will and testament of L. A. Neil, deceased, and that Jesse L. Neil, Angie I. King and Edna A. Torrence, or their successors in interest, are the lawful legatees of the estate of L. A. Neil, deceased, subject to the

payment of a legacy of $50 to the contestant here, and other debts, if any, of the estate. But it appearing that Elmo Neil, the contestant, seems not to have had the share of his father's estate which he had the right to expect would be given to him, neither party will be allowed costs.

REVERSED AND DECREE ENTERED.

BURNETT, RAND and COSHOW, JJ., concur.