Argued April 12, affirmed April 24, 1928.

## IN RE ESTATE OF WALTER D. SHAFF.

## DELLA C. ADKINSON ET AL. v. TERESA L. BLOMQUIST ET AL.

### (266 Pac. 630.)

**Wills—Witnesses to Will Need not Sign in Presence of Each Other.**

1. Witnesses to a will are not required to sign the will in the presence of each other.

**Wills—Testator Need not Inform Witnesses of Contents of Will.**

2. It is not necessary that testator inform witnesses to the will relative to contents of document.

**Wills—Evidence Held to Establish That Will was Signed in Presence of Testator (Or. L., § 10095).**

3. Evidence in will contest *held* sufficient to establish that will was witnessed in presence of testator within meaning of Section 10095, Or. L., providing that will shall be attested by two or more competent witnesses, subscribing their names to the will, in presence of testator.

---

1. Necessity that attesting witnesses be present at the same time, see note in L. R. A. 1917F, 872. See, also, 28 R. C. L. 130, 131.

2. Necessity for knowledge by witnesses of contents of will, see note in 114 Am. St. Rep. 231. See, also, 28 R. C. L. 125.

3. Attestation of will when deemed to be in presence of testator, see notes in 28 Am. Rep. 595; 60 Am. Rep. 285; 114 Am. Rep. 285; 6 Ann. Cas. 414; 1 L. R. A. (N. S.) 393; L. R. A. 1916C, 950. See, also, 28 R. C. L. 129.

**Wills—Courts will not Adopt Strained and Technical Construction Relating to Attestation of Will, Where Capacity and Intention are Plain (Or. L., § 10095).**

4. Courts will not adopt a strained and technical construction of Section 10095, Or. L., relative to attestation of will, in order to defeat will, where capacity and intention are plain, and where by fair and reasonable intendment the statute may be held to have been complied with.

Wills, 40 Cyc., p. 1098, n. 60, p. 1119, n. 30, p. 1122, n. 49, p. 1123, n. 62, p. 1125, n. 70, p. 1285, n. 26, p. 1304, n. 66.

From Marion: L. H. McMAHAN, Judge.

Department 1.

AFFIRMED.

For appellants there was a brief over the names of *Mr. Walter C. Winslow* and *Mr. V. A. Goode,* with an oral argument by *Mr. Winslow.*

For respondents there was a brief and oral argument by *Mr. John Bayne.*

McBRIDE, J.—This is a contest as to the sufficiency of the execution of a will. The contest is narrowed down to a single point, namely: Did the witnesses sign their names as such in the presence of the testator? The will is dated September 11, 1922, signed and sealed by the testator, and has the following attestation clause signed by these witnesses:

"Signed, sealed and declared by said Walter D. Shaff as his last will and testament in presence of us who at his request and in his presence and in the presence of each other subscribed our names as witnesses hereto.

   "GEO. A. SMITH, Residing at Stayton, Oreg.
   "E. S. PIESER,   "  "  "  "
   "S. A. PIESER,   "  "  "  "."

The will is conclusively shown to have been in the handwriting of the testator and his signature is conclusively shown to be genuine. All the witnesses swear that they signed at the request of the testator. So that, on the face of it, it appears to be a valid will executed with all the formalities required by law and, indeed, from the orderly manner in which it is prepared, indicating more than ordinary capacity in that respect for a layman. In addition to this, his mental soundness is not questioned, so that there is no doubt but that he knew exactly what he was doing when he wrote and executed the document and asked the witnesses to sign it.

The testator died on March 26, 1924, and on the second day of April, 1924, George A. Smith was appointed administrator of his estate and qualified as such. On the twenty-fourth day of August, 1924, John Bayne, on behalf of Charles W. Shaff, offered the will for probate in common form and it was admitted to probate, but, Charles W. Shaff not being a resident of the state, George Keech was appointed administrator with the will annexed.

The appellants then brought this contest alleging the invalidity of the will.

The grounds of contest are briefly summed up in the brief of the able counsel for appellants in the following language:

"It is claimed by appellants that this irregularity exists in two particulars:

"First, the testator did not sign the document in the presence of either or any of the witnesses, nor did he acknowledge it or the signature to it to said witnesses.

"Second, it is claimed that the witnesses did not attest the document in the presence of the testator."

In considering the instant question, it would seem to be necessary, first, to refer to the statute prescribing the requisites of a valid will. Section 10095, Or. L., is as follows:

"Every will shall be in writing, signed by the testator, or by some other person under his direction, in his presence, and shall be attested by two or more competent witnesses, subscribing their names to the will, in the presence of the testator."

This clause in the statute was enacted by the territorial legislature in 1853, and has continued in force, without amendment, ever since. The act was complete in itself unless amended by implication by the act of 1862, which prescribes certain rules of evidence among which is the following now known as Section 780, Or. L., reading as follows:

"A subscribing witness is one who sees a writing executed, or hears it acknowledged, and at the request of the party thereupon signs his name as a witness."

In *Luper* v. *Werts and Smith*, 19 Or. 122 (23 Pac. 850), Chief Justice THAYER held that by analogy the term "subscribing witness," in the section last quoted, was the equivalent of the "attestation" required in Section 10095, Or. L., and upon this rendered a very technical decision concurred in by Mr. Justice STRAHAN which, as Chief Justice THAYER himself intimates, sacrificed moral justice to technical law, and which was vigorously combated by Mr. Justice LORD in an able dissenting opinion. So far as the writer is advised, the latter section has not been cited or referred to in any other opinion of this court involving the execution of wills.

In the judgment of the writer, the statute in reference to the execution of wills still remains, as it was

originally intended, to be complete in itself, and it was never the intention of the legislature to import into it any new or different requirements. This, in practice, has been the ruling of this court. The question, however, becomes of minor importance in view of the testimony. The witnesses did hear the writing acknowledged, constructively at least, when the testator handed it to them and asked them to witness it for him. They knew his signature, as they admit, and, in spite of their protestations now, they, or some of them at least, must have read the attestation clause in order to know where and what to sign. They say now that they did not know what they were witnessing. Two years and more had passed before they testified and one witness had become interested to the extent that he had become administrator of the estate, which was not small, and was, to the extent of his fees, at least, interested in defeating the will.

When men sign their names as witnesses to the most solemn document that a man can execute, and solemnly attest that they signed it in the presence of the testator and of each other, and that he then and there declared that document to be his last will and testament, then testimony, that their attestation was false, should be taken *cum grano salis*. Were these witnesses careless with the truth when they signed the attestation, or are they careless now? They must have known that they were not signing a note, a deed or a bond, and in the judgment of the writer, their attestation is quite as likely to be true as their statements now.

1, 2. There is no law requiring the witnesses to sign in the presence of each other: *In re Estate of Neil,* 111 Or. 282, 293 (226 Pac. 439); *Mead* v. *Trus-*

*tees, etc.,* 229 Ill. 526 (82 N. E. 371, 11 Ann. Cas. 426, 14 L. R. A. (N. S.) 255). Neither is it necessary for the testator to inform the witnesses of the contents of the document: *In re Estate of Neil, supra* (226 Pac. 442); *Skinner's Will,* 40 Or. 571 (62 Pac. 523, 67 Pac. 951).

3. We come now to the principal question in this case. Was the will witnessed in the presence of the testator? The transaction took place in a pool-room then conducted by E. S. Pieser, who was assisted by his brother S. A. Pieser, both of whom signed the will as witnesses. The pool-room is a large single room approximately 48 feet long by 25 feet wide. Its length is north and south with the entrance on the east end. In front of the door and probably 16 feet therefrom is a showcase and to the right of the door inside is a bar about 18 feet long extending west so as to form practically a right angle with the showcase, though projecting west past the showcase a foot or two. To the left of the showcase and leading into the main room is a space of 12 feet or so, making a passageway to the main hall where the pool-tables and stove are situated west of the showcase, and about 6 or 7 feet distant is a short partition not reaching to the ceiling and about 12 feet long, the west end being probably 7 feet from the north wall of the building. There is a window in the center of this partition 26 inches wide and 24 inches high, the bottom of the window being about 4 feet above the floor. The rest of the room was occupied by seats, billiard-tables, a stove and other things of that character.

Smith, one of the witnesses, testified that the testator came in on the south side of the pool-room and met him at a point which he marked on the maps, and which is about 32 feet from where he signed the

document as a witness, and handed him the document and requested him to sign; that he took it and went north around the east end of the billiard-table and around the north end of the partition to the northeast corner of the room where there was a desk, and there procured a pen and ink and signed the document on the north side of the bar at a point which he indicates would be about 4 feet from the east end and immediately returned to where he left the testator and handed him the document, the whole transaction taking, as he estimated, about two minutes. Nothing further was said by either party. There were some partial obstructions to a view through the window. If unobstructed, the line of vision through the window, from where he claims the testator sat, would have enabled the testator to have seen Smith in the act of signing, and taking the testimony all together and Smith's evident reluctance to testify to anything that would help respondents' case, we are satisfied that the testator could have seen Smith in the act of signing, if he had chosen to look, and taking into consideration the meticulous pains he had taken in preparing the attestation, we are inclined to the belief that he did look, although, as we shall presently show, actual visible eyesight of the attesting witness is not always necessary to constitute being in the ''presence'' of the testator. If it were, a blind man could never make a will.

The other two witnesses placed the testator a little farther away and sitting in a position where he probably could not see them in the act of signing without moving at least his head and shoulders a foot or two to the left. Whether he did so they do not know. He requested them to sign, and each signed at once

and immediately returned the document to him. The act of signing and returning the document could not have occupied more than a minute or so. There was no opportunity of forging or changing documents, especially as the will was in the testator's handwriting. So, we have a case where all the parties were in the same room, where the testator had an opportunity to have seen the witnesses in the act of signing had he wished to do so, where there was no opportunity, nor time, nor reason for the witnesses fraudulently to alter the document, and where it is confessedly the fact that the document witnessed by them was the one written by his own hand, as two of the witnesses must have known, and the one signed by him and which he placed in their hands saying "sign this *for me.*" This was all the declaration of his execution that was necessary.

There has been much discussion by the courts of the meaning of the words "in the presence of the testator." The reason of the rule, as before remarked, is to obviate any opportunity of the witnesses committing a fraud upon the testator, by changing or altering the document, and where the party executing the will is *in extremis,* or physically or mentally weak, or when there may be a doubt raised, for any reason, of his capacity to execute a will or to realize his surroundings and the nature of the act being performed, the courts have required a greater degree of technical compliance with the very extreme letter of the statute than in those cases where a person of fair business capacity, entirely capable of realizing his surroundings, executes his last testament. While it is not necessary to adopt or approve in its entirety all that is said in *Sturdivant* v. *Birchett,* 10 Gratt. (51 Va.)

67, the following excerpt from the opinion in that case pretty accurately expresses the holdings of the more advanced courts on this subject.

"That these terms do not in their legal signification necessarily imply that the testator and the witnesses shall be in the same room at the time of the attestation, is sufficiently established by the numerous cases in which an attestation in a different room from that which the testator remained, has been held good. Nor indeed, is it indispensable that they should be in the same house, as is shown by the case of *Casson* v. *Dade*, 1 Bro. C. C. 99, in which the testatrix signed the will in her carriage in the street, and it was then taken by the witnesses into an attorney's office, and there subscribed by them; the lady remaining in her carriage, from which, as it appeared, what passed within the office might have been seen. So it is equally clear that actual sight or inspection of the process of the witnesses signing their names is not required; for all the cases agree that it is not necessary the testator should actually see the witnesses subscribe, but only that he may see if he will. Nor indeed is even the ability to see necessarily implied, because it is well settled that a blind man may make a will; for the faculty of sight in such a case a concurrence of other circumstances being substituted, which give adequate assurance that he is acquainted with the contents of the instrument, and intends to make the testamentary disposition which it contains. * *

"In determining, therefore, the legal force and import of the words 'presence,' we are not to be restricted to the sense in which it is used -in common and familiar parlance; but in order to decide whether it may be predicated in a legal sense of any particular case that the witnesses subscribed their names in the presence of the testator or otherwise, we should look to the whole character of the transaction and all the attendant circumstances. Whether the witnesses have attested in the presence of the testator, in its enlarged

and legal sense, is a fact for the consideration of the jury, under all the circumstances of the case.''

In *Nock* v. *Nock's Exrs.*, 10 Gratt. (51 Va.) 116, 117, it is said:

''The statute uses the word *presence*, but has not attempted to define it. Its meaning depends upon the circumstances of each particular case; and the duty of ascertaining it devolves on the court or jury which has to decide the case; their guides being reason and common sense, controlled only by authoritative adjudications. It is a word of which every man has something like a just idea, but which no man can accurately define. In fact, it implies an area which has no metes and bounds; but is contracted or enlarged according as the attestation occurs, as it certainly may, 'in a small chamber, or a spacious hall, a public street or an open field.' ''

It is not necessary for this court to throw itself into a paroxysm of citations to show that this is the later and better rule. The instances are numerous and may be found in the text or note of all the modern cyclopedias.

The same rule is often applied in the interpretation of these words when used in connection with matters other than the execution of a will. Thus, in the case of *Savin, Petitioner*, 131 U. S. 267 (33 L. Ed. 150, 9 Sup. Ct. Rep. 699), where the petitioner attempted to intimidate a witness, the act having been committed in a witness-room adjacent to the courtroom, and it being contended that the act was not committed in the presence of the court, Mr. Justice HARLAN said:

''We are of opinion that, within the meaning of the statute, the court, at least when in session, is present in every part of the place set apart for its own use, and for the use of its officers, jurors and witnesses;

and misbehavior anywhere in such place is misbe-
havior in the presence of the court.''

4. While it is the duty of the court to observe care-
fully the spirit and intent of the statute, they will
not adopt a strained and technical construction to
defeat a will where the capacity and intention is plain
and where by fair and reasonable intendment the
statute may be held to have been complied with, and
such is the case here.

It is not contended that the testator was incapable
of making a will. It is not contended that the docu-
ment offered for probate does not express his deliber-
ate wishes. It is not contended that he did not re-
quest the witnesses to sign. It is not denied that
they did sign as witnesses in pursuance of his request.
It is not denied that the testator was in the same
large room with them when they so signed. It is not
denied that they immediately returned the document
after signing and that he received it from them and
kept it up to the day of his death.

The evidence does not show that he did not see
them physically affix their signatures. Although it
may be that he did not, it does show that, by slight
exertion, he might have seen them. For the court to
invoke a strained technicality to defeat the purposes
of the testator here would be to perpetrate a great
injustice, and to depart from that sound interpretation
which the best authorities justify.

The decree of the Circuit Court is affirmed.

AFFIRMED.

RAND, C. J., and COSHOW and ROSSMAN, JJ., concur.