Argued March 24; affirmed May 1, 1934

In re Fletcher's Estate

# FLETCHER *v.* WILLIS

(32 P. (2d) 123)

*B. G. Skulason,* of Portland, for appellant.

*L. W. O'Rourke* and *John F. Logan,* both of Portland, for respondent.

BEAN, J. This is a contest of the will of F. X. Fletcher, deceased. It is alleged by the contestant that the will, probated in common form, is not the will of decedent; that F. X. Fletcher, the decedent, by reason of his weakened physical condition, did not know or understand that he was making his will. This phase of the case is not urged at the present time. It is also alleged and contended, on the part of the contestant, that the will was not written in accordance with the directions of the testator, and further that the name of the executor of the will was changed after the will was executed by the decedent.

In February, 1932, Mr. Fletcher, 71 years of age, consulted Mr. Edwin Lindstedt, an attorney at law, in Portland, Oregon, and advised him that he wanted to make a will. Miss Ruth E. Carr, the stenographer to whom Mr. Lindstedt dictated the will, testified that it was dictated in the presence of Mr. Fletcher at Mr. Lindstedt's office. Mr. Lindstedt testified, as he remembers it, that the directions were given at Mr. Fletcher's house. At that time, Mr. Fletcher was the father, by his first wife, of ten children, all of whom were living and had reached the age of majority, ranging in ages from 25 to 46 years. He lived with his second wife, Ellen Jane Fletcher, contestant. The estate was inventoried at $32,357.10 most of which was personal property in the form of notes, mortgages and contracts on real estate. About February 28, 1932, Mr. Fletcher became slightly ill and was confined to his home, but not to his bed. On Sunday, March 6, 1932, F. X. Fletcher advised his oldest son, Charles Fletcher,

that he had a will drawn at Mr. Lindstedt's office, and on March 7, 1932, Charles Fletcher went to Mr. Lindstedt's office in the Failing building, Portland, Oregon. Mr. Lindstedt took the will that had been dictated by him in the presence of F. X. Fletcher, deceased, as testified to by Miss Ruth E. Carr, to F. X. Fletcher's home. The will had been dictated about a month before that time. On the way from Mr. Lindstedt's office to Mr. Fletcher's home, Mr. Lindstedt advised Charles Fletcher that he had requested Mr. Fletcher to sign the will on one or two prior occasions, but Mr. Fletcher, the decedent, did not want to sign it because he, Lindstedt, was named executor therein. When he arrived at the home F. X. Fletcher, Mr. Lindstedt read the will aloud in the presence of F. X. Fletcher, the deceased, Ellen Jane Fletcher, the widow and contestant, Charles Fletcher and Rev. J. F. B. Engertsberger, assistant pastor of St. Stephens Catholic Church, of which church both the decedent and contestant were members. When Mr. Lindstedt, in the reading of the will, came to the words "Edwin Lindstedt" contained therein, F. X. Fletcher, the decedent, objected and indicated that he desired Tillie Willis, his daughter, should be made executrix, and, as testified by Rev. Engertsberger, who is commonly called Father Basil, one of the witnesses to the will, Mr. Lindstedt, the attorney for Mr. F. X. Fletcher, drew a line through his own name with a pen and inserted the name of "Tillie Willis" in lieu of and in place of his own name, and also drew a line through the "tor" of the word "executor", changing the designation from "tor" to "trix". F. X. Fletcher then signed the will, Father Basil assisting him by steadying his hand. Next Rev. J. F. B. Engertsberger attested the will, and, immediately following, Mr. Lindstedt, the attor-

ney for the decedent herein, signed the attestation clause on the will. Omitting the attestation clause, which is in the usual form, the will is as follows:

"I, F. X. Fletcher, being of sound mind and memory and not acting under duress, fraud or undue influence of any person whatsoever, do make, publish and declare this my last Will and Testament in the following manner, that is to say: I. I order and direct that all of my just debts and funeral expenses be paid as soon after by death as is practicable. II. I bequeath to my beloved wife, Ellen Jane Fletcher, for and during her natural life, all revenue, interest and rental from my property whether real, personal or mixed; out of said revenue, interest and rental, she is required to pay the taxes, insurance against fire and such other sums that shall be necessary for the maintenance of my property. III. I give, devise and bequeath the remainder and residue of my property, share and share alike, to my ten children, to-wit: Charles A. Fletcher, Etta Hudson, Dora Sundberg, Eva Krawsky, Mertle Fletcher, Mary Jaeckel, Tillie Willis, Clara Green, Hermas Eugene Fletcher and Austin Fletcher, but said property is not to be distributed until after the death of my said wife, Ellen Jane Fletcher.

I make, constitute and appoint Tillie Willis to be the Executrix of this my last Will and Testament, hereby revoking all former Wills by me at any time made.

In Witness Whereof, I have hereunto set my hand and seal this 7th day of March, 1932. (Signed) F. X. Fletcher (SEAL)."

The will was probated in common form on April 12, 1932. Edwin Lindstedt, the attorney, signed the usual affidavit, authenticating the will and stating that F. X. Fletcher published the said instrument as, and declared the same to be, his last will and testament, "and requested us, in attestation thereof, to sign the same as witnesses. The said J. F. B. Engertsberger, O. S. B.

and I, then and there, in the presence of F. X. Fletcher, deceased, and in the presence of each other subscribed our names as witnesses to said instrument'', and further, that the said F. X. Fletcher ''was of sound and disposing mind, and not under any restraint, undue influence or fraudulent misrepresentations.'' Upon the probate of the will in solemn form and the hearing of the contest, Mr. Lindstedt testifies that he remembers the change in the name of the executor was made after the will was executed by F. X. Fletcher.

A careful reading of the testimony indicates that Mr. Fletcher was not satisfied to have Mr. Lindstedt act as executor, and, while he was partially paralyzed and could not talk very plainly, he indicated that he desired Tillie Willis to be made executrix. Father Basil, who was a very careful and fair appearing witness, testified that there was some change made in the will and it was then signed by Mr. Fletcher, the decedent, if he remembered correctly. Charles Fletcher testified to the same effect.

■ A full attestation clause, which recites compliance with all formalities of execution and is signed by the witnesses, is *prima facie* evidence of the validity of the will, although the witness' memory is faulty, or he contradicts the facts stated in the clause, or where the witness is dead: 40 Cyc. 1304; 28 R. C. L. 368, § 369; *In re Skinners Will,* 40 Or. 571 (62 P. 523, 67 P. 951) ; *In re Mendenhall's Will,* 43 Or. 542 (72 P. 318, 73 P. 1033) ; 1 Page on Wills, (2d Ed.) 1119. It is stated in 1 Page on Wills, 1119, as follows:

''when a paper propounded as a will is shown to have been signed by the alleged testator and the requisite number of witnesses, in the absence of any satisfactory evidence to the contrary, the presumption is that all the formalities have been complied with.''

And on page 1124 of the same volume, we find:

"Even where a subscribing witness denies the existence of certain facts necessary for the legal execution of the will, the presumption of regularity may prevail over such direct evidence. The subscribing witness, by acting as such, in effect formally declares that all the facts necessary to the legal execution of the will exist, and he has in advance seriously discredited his subsequent denial of these facts under oath. The presumption of the performance of the necessary acts may, therefore, not be overcome by such adverse testimony, and a will may be admitted to probate, though one or more of the subscribing witnesses testify adversely thereto. The subscribing witnesses are especially discredited where they testify in favor of the will at probate and against it at contest."

We find the following language in the case of *In re Estate of Shaff,* 125 Or. 288 (266 P. 630):

"When men sign their names as witnesses to the most solemn document that a man can execute, and solemnly attest that they signed it in the presence of the testator and of each other, and that he then and there declared that document to be his last will and testament, then testimony that their attestation was false, should be taken *cum grano salis*. Were these witnesses careless with the truth when they signed the attestation, or are they careless now? They must have known that they were not signing a note, a deed or a bond, and in the judgment of the writer, their attestation is quite as likely to be true as their statements now."

It developed that Mr. Lindstedt was indebted to the estate several thousand dollars, he having given his personal note for $400 and assigned notes and mortgages to F. X. Fletcher and endorsed the same upon which he was liable, and he was apparently somewhat perplexed in regard to the matter of the will.

■ In the present case Mr. Lindstedt signed his name as a witness to the solemn document executed as the last will and testament of F. X. Fletcher and solemnly attested that he signed it in the presence of the testator and of the other witness, and that F. X. Fletcher then and there declared the document to be his last will and testament. Mr. Lindstedt also made the affidavit heretofore referred to, upon the probate of the will in common form. We therefore rely upon the testimony of the other subscribing witness, Rev. J. F. B. Engertsberger, and the witness who was present at the execution of the will, namely, Charles Fletcher, and are satisfied that the will was regularly executed and that Tillie Willis is the executrix of the said will.

■ It is contended by contestant that F. X. Fletcher executed the instrument under a mistake, that he did not know the distinction between the legal effect of the instrument and that which the scrivener had erroneously prepared. Mr. Lindstedt testified that F. X. Fletcher, as near as he could say at the time he requested his will to be drawn, said: "I want my wife to have the property, and then when she is gone it will go to the children." Mr. Lindstedt does not endeavor to state the exact language used by Mr. Fletcher at the time, and it will be noticed that if Mr. Fletcher had said: "I want my wife to have (the use of) the property and then when she is gone it will go to the children," it would be exactly in accordance with the will, as drawn by Mr. Lindstedt.

It is submitted by contestant that a devise or bequest of all property to the wife for her use during her life and whatever remained at her death to go to the testator's children, vests in the widow the right to use not only the income from the estate but such portions of the corpus thereof as she may need, citing 2 Schouler

on Wills, (6th Ed.) §§ 1244, 1247; *Quarton v. Barton and Shundonny,* 249 Mich. 474 (229 N. W. 465, 69 A. L. R. 820), note at 831; *Mitchell v. Morrisville College,* 305 Mo. 466 (266 S. W. 481); *Bressman v. Retsky,* 96 N. J. Eq. 222 (124 Atl. 529); *Kincaid v. Bell,* 205 Ky. 487 (266 S. W. 44).

The testimony shows that while Mr. Fletcher was partially paralyzed he thoroughly understood what he was doing and understood the will as it was read to him. 1 Schouler on Wills, (6th Ed.) § 257, mentions the leading English case where the rule is laid down that the fact that the will has been read over to a capable testator is conclusive evidence that he approved, as well as knew, the contents thereof. Although the rigidity of this rule has been doubted, still it is the modern tendency to regard as conclusive any will which has been read over by or to the testator. A different holding would practically leave the construction of the will to depend upon unreliable oral testimony. In 1 Jarman on Wills (7th Ed.) p. 32, we find, in effect, that the presumption is that the words, which have been read over to and then signed by a capable testator as his will, represent his will, his whole will, and nothing but his will. The author quotes from L. R. (1923) Probate Div., pp. 46, 53: "and if, (a testator) knowing the words intended to be used, he approves them and executes the will, then he knows and approves the contents of his will, and all the contents, even though such approval may be due to a mistaken belief of his own, or to honestly mistaken advice from others, as to their true meaning and legal effect".

The testimony plainly shows that the will, as prepared by Mr. Lindstedt, was read to and approved by the testator, that he understood the provisions thereof,

as well as any layman could understand such a document, and it is not shown that there was any mistake in the draft or execution of the will.

It is noticed that the will was directed by Mr. F. X. Fletcher and dictated by Mr. Lindstedt about a month before its execution, when Mr. Fletcher was in fair health. The time of the dictation was fixed as February by the stenographer, who took the dictation of the will, as shown by her notebook, although the exact date was not noted.

■ The trial judge heard the testimony and saw the witnesses and his findings of fact are entitled to great weight: *Munly v. Jones,* 130 Or. 252 (279 P. 630); *Edwards v. Tobin,* 132 Or. 38 (284 P. 562, 68 A. L. R. 152).

■ The testator's hand was steadied by Father Basil when he executed the will. This does not show improper execution: *In re Edwards' Estate,* 141 Or. 595 (17 P. (2d) 570). Where the testator, at the time of making his last will and testament, comprehends the nature of the acts in which he is then engaged, and knows the nature and extent of the property which makes up his estate and which he intends to dispose of, and has in mind the persons who are, should or might be the objects of his bounty, and the scope and reach of the provisions of the written instrument, he has sufficient capacity to make a will: *Copenhefer v. Powers,* 137 Or. 145 (300 P. 505).

There is no error in the present case which warrants its reversal. See *Morley v. Silverton Hospital,* 138 Or. 75 (5 P. (2d) 92); *In re Tyler's Estate,* 121 Cal. 405 (53 P. 928).

The decree of the circuit court is affirmed.

RAND, C. J., and CAMPBELL and BAILEY, JJ., concur.