508 S.E.2d 610

**Janet Sue Lanham STEVENS, Peggy Lanham Salisbury, Betty Jean Bayes, and Patricia Miller Moyers, Plaintiffs Below, Appellants,**

v.

**Paul Douglas CASDORPH, as Executor of the Last Will and Testament of Homer Haskell Miller; Paul Douglas Casdorph, Individually; and Patricia Eileen Casdorph, Defendants Below, Appellees.**

**No. 25144.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 16, 1998.

Decided Sept. 30, 1998.

Workman, J., dissented and filed opinion in which Maynard, J., joined.

Arden J. Curry, Arden J. Curry, II, Paul, Curry, Sturgeon & Vanderford, Charleston, West Virginia, Attorneys for the Appellants.

William E. Hamb, John T. Poffenbarger, Hamb & Poffenbarger, Charleston, West Virginia, Attorneys for the Appellees.

PER CURIAM:

The plaintiffs below and appellants herein Janet Sue Lanham Stevens, Peggy Lanham Salisbury, Betty Jean Bayes, and Patricia Miller Moyers (hereinafter collectively referred to as the "Stevenses") appeal a summary judgment ruling for the defendants by the Circuit Court of Kanawha County. The Stevenses instituted this action against Patricia Eileen Casdorph and Paul Douglas Casdorph, individually and as executor of the estate of Homer Haskell Miller, defendants below and appellees herein (hereinafter referred to as "Casdorphs"), for the purpose of challenging the will of Homer Haskell Miller. The circuit court granted the Casdorphs' cross-motion for summary judgment. On appeal, this Court is asked to reverse the trial court's ruling. Following a review of the parties' arguments, the record, and the pertinent authorities, we reverse the decision of the Circuit Court of Kanawha County.

## I.

### FACTUAL BACKGROUND

On May 28, 1996, the Casdorphs took Mr. Homer Haskell Miller to Shawnee Bank in Dunbar, West Virginia, so that he could execute his will.[1] Once at the bank, Mr. Miller asked Debra Pauley, a bank employee and public notary, to witness the execution of his will. After Mr. Miller signed the will, Ms. Pauley took the will to two other bank employees, Judith Waldron and Reba McGinn, for the purpose of having each of them sign the will as witnesses. Both Ms. Waldron and Ms. McGinn signed the will. However, Ms. Waldron and Ms. McGinn testified during their depositions that they did not actually

---

1. Mr. Miller was elderly and confined to a wheelchair.

see Mr. Miller place his signature on the will. Further, it is undisputed that Mr. Miller did not accompany Ms. Pauley to the separate work areas of Ms. Waldron and Ms. McGinn.

Mr. Miller died on July 28, 1996. The last will and testament of Mr. Miller, which named Mr. Paul Casdorph[2] as executor, left the bulk of his estate to the Casdorphs.[3] The Stevenses, nieces of Mr. Miller, filed the instant action to set aside the will. The Stevenses asserted in their complaint that Mr. Miller's will was not executed according to the requirements set forth in W.Va.Code § 41–1–3 (1995).[4] After some discovery, all parties moved for summary judgment. The circuit court denied the Stevenses' motion for summary judgment, but granted the Casdorphs' cross motion for summary judgment. From this ruling, the Stevenses appeal to this Court.

## II.

## STANDARD OF REVIEW

This Court has held that "[a] circuit court's entry of summary judgment is reviewed de novo." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). In syllabus point 5 of *Wilkinson v. Searls*, 155 W.Va. 475, 184 S.E.2d 735 (1971), we indicated that "[a] motion for a summary judgment should be granted if the pleadings, exhibits and discovery depositions upon which the motion is submitted for decision disclose that the case involves no genuine issue as to any material fact and that the party who made the motion is entitled to a judgment as a matter of law." In syllabus point 9 of *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), we held that:

A motion by each of two parties for summary judgment does not constitute a determination that there is no issue of fact to be tried; and both motions should be denied if there is actually a genuine issue

as to a material fact. When both parties move for summary judgment each party concedes only that there is no issue of fact with respect to his particular motion.

## III.

## DISCUSSION

The Stevenses' contention is simple. They argue that all evidence indicates that Mr. Miller's will was not properly executed. Therefore, the will should be voided. The procedural requirements at issue are contained in W.Va.Code § 41–1–3 (1997). The statute reads:

No will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover, unless it be wholly in the handwriting of the testator, *the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe the will in the presence of the testator, and of each other*, but no form of attestation shall be necessary. (Emphasis added.)

The relevant requirements of the above statute calls for a testator to sign his/her will or acknowledge such will in the presence of at least two witnesses at the same time, and such witnesses must sign the will in the presence of the testator and each other. In the instant proceeding the Stevenses assert, and the evidence supports, that Ms. McGinn and Ms. Waldron did not actually witness Mr. Miller signing his will. Mr. Miller made no acknowledgment of his signature on the will to either Ms. McGinn or Ms. Waldron. Likewise, Mr. Miller did not observe Ms. McGinn and Ms. Waldron sign his will as witnesses. Additionally, neither Ms. McGinn nor Ms. Waldron acknowledged

---

**2.** Paul Casdorph was a nephew of Mr. Miller.

**3.** Mr. Miller's probated estate exceeded $400,-000.00. The will devised $80,000.00 to Frank Paul Smith, a nephew of Mr. Miller. The remainder of the estate was left to the Casdorphs.

**4.** As heirs, the Stevenses would be entitled to recover from Mr. Miller's estate under the intestate laws if his will is set aside as invalidly executed.

to Mr. Miller that their signatures were on the will. It is also undisputed that Ms. McGinn and Ms. Waldron did not actually witness each other sign the will, nor did they acknowledge to each other that they had signed Mr. Miller's will. Despite the evidentiary lack of compliance with W.Va.Code § 41–1–3, the Casdorphs' argue that there was substantial compliance with the statute's requirements, insofar as everyone involved with the will knew what was occurring. The trial court found that there was substantial compliance with the statute because everyone knew why Mr. Miller was at the bank. The trial court further concluded there was no evidence of fraud, coercion or undue influence. Based upon the foregoing, the trial court concluded that the will should not be voided even though the technical aspects of W.Va.Code § 41–1–3 were not followed.

■ Our analysis begins by noting that "[t]he law favors testacy over intestacy." Syl. pt. 8, *In re Teubert's Estate*, 171 W.Va. 226, 298 S.E.2d 456 (1982). However, we clearly held in syllabus point 1 of *Black v. Maxwell*, 131 W.Va. 247, 46 S.E.2d 804 (1948), that "[t]estamentary intent and a written instrument, executed in the manner provided by [W.Va.Code § 41–1–3], existing concurrently, are essential to the creation of a valid will." *Black* establishes that mere intent by a testator to execute a written will is insufficient. The actual execution of a written will must also comply with the dictates of W.Va.Code § 41–1–3. The Casdorphs seek to have this Court establish an exception to the technical requirements of the statute. In *Wade v. Wade*, 119 W.Va. 596, 195 S.E. 339 (1938), this Court permitted a narrow exception to the stringent requirements of the W.Va.Code § 41–1–3. This narrow exception is embodied in syllabus point 1 of *Wade*:

> Where a testator acknowledges a will and his signature thereto in the presence of two competent witnesses, one of whom then subscribes his name, the other or first witness, having already subscribed the will in the presence of the testator but out of the presence of the second witness, may acknowledge his signature in the presence of the testator and the second witness, and

such acknowledgment, if there be no indicia of fraud or misunderstanding in the proceeding, will be deemed a signing by the first witness within the requirement of Code, 41–1–3, that the witnesses must subscribe their names in the presence of the testator and of each other.

*See Brammer v. Taylor*, 175 W.Va. 728, 730 n. 1, 338 S.E.2d 207, 215 n. 1 (1985), ("[T]he witnesses' acknowledgment of their signatures . . . in the presence of the testator [and in the presence of each other] is tantamount to and will be deemed a 'signing' or 'subscribing' in the presence of those persons").

■ *Wade* stands for the proposition that if a witness acknowledges his/her signature on a will in the physical presence of the other subscribing witness *and the testator*, then the will is properly witnessed within the terms of W.Va.Code § 41–1–3. In this case, none of the parties signed or acknowledged their signatures in the presence of each other. This case meets neither the narrow exception of *Wade* nor the specific provisions of W.Va. Code § 41–1–3.

### IV.

### CONCLUSION

In view of the foregoing, we grant the relief sought in this appeal and reverse the circuit court's order granting the Casdorphs' cross-motion for summary judgment.

Reversed.

WORKMAN, Justice, dissenting:

The majority once more takes a very technocratic approach to the law, slavishly worshiping form over substance. In so doing, they not only create a harsh and inequitable result wholly contrary to the indisputable intent of Mr. Homer Haskell Miller, but also a rule of law that is against the spirit and intent of our whole body of law relating to the making of wills.

There is absolutely no claim of incapacity or fraud or undue influence, nor any allegation by any party that Mr. Miller did not consciously, intentionally, and with full legal capacity convey his property as specified in his will. The challenge to the will is based

solely upon the allegation that Mr. Miller did not comply with the requirement of West Virginia Code 41–1–3[1] that the signature shall be made or the will acknowledged by the testator in the presence of at least two competent witnesses, present at the same time. The lower court, in its very thorough findings of fact, indicated that Mr. Miller had been transported to the bank by his nephew Mr. Casdorph and the nephew's wife. Mr. Miller, disabled and confined to a wheelchair, was a shareholder in the Shawnee Bank in Dunbar, West Virginia, with whom all those present were personally familiar. When Mr. Miller executed his will in the bank lobby, the typed will was placed on Ms. Pauley's desk, and Mr. Miller instructed Ms. Pauley that he wished to have his will signed, witnessed, and acknowledged. After Mr. Miller's signature had been placed upon the will with Ms. Pauley watching, Ms. Pauley walked the will over to the tellers' area in the same small lobby of the bank. Ms. Pauley explained that Mr. Miller wanted Ms. Waldron to sign the will as a witness. The same process was used to obtain the signature of Ms. McGinn. Sitting in his wheelchair, Mr. Miller did not move from Ms. Pauley's desk during the process of obtaining the witness signatures. The lower court concluded that the will was valid and that Ms. Waldron and Ms. McGinn signed and acknowledged the will "in the presence" of Mr. Miller.

In *Wade v. Wade*, 119 W.Va. 596, 195 S.E. 339 (1938), we addressed the validity of a will challenged for such technicalities[2] and observed that "a narrow, rigid construction of the statute should not be allowed to stand in the way of right and justice, or be permitted to defeat a testator's disposition of his property." 119 W.Va. at 599, 195 S.E. at 340–341. We upheld the validity of the challenged will in *Wade*, noting that "each case must rest on its own facts and circumstances to which the court must look to determine whether there was a subscribing by the witnesses in the presence of the testator; that substantial compliance with the statute is all that is required...." *Id.* at 599, 195 S.E. at 340. A contrary result, we emphasized, "would be based on illiberal and inflexible construction of the statute, giving preeminence to letter and not to spirit, and resulting in the thwarting of the intentions of testators even under circumstances where no possibility of fraud or impropriety exists." *Id.* at 600, 195 S.E. at 341.

The majority's conclusion is precisely what was envisioned and forewarned in 1938 by the drafters of the *Wade* opinion: illiberal and inflexible construction, giving preeminence to the letter of the law and ignoring the spirit of the entire body of testamentary law, resulting in the thwarting of Mr. Miller's unequivocal wishes. In *In re Estate of Shaff*, 125 Or. 288, 266 P. 630 (1928), the court encountered an argument that the attesting witness had not signed the will in the presence of the testator. The evidence demonstrated that the witnesses had signed the document at the request of the testator, and the court reasoned:

> While it is the duty of the court[s] to observe carefully the spirit and intent of the statute, they will not adopt a strained

---

1. West Virginia Code § 43–1–3 provides as follows:

> No will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover, unless it be wholly in the handwriting of the testator, the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe the will in the presence of the testator, and of each other, but no form of attestation shall be necessary.

2. We concluded as follows in syllabus point one of *Wade*:

> Where a testator acknowledges a will and his signature thereto in the presence of two competent witnesses, one of whom then subscribes his name, the other or first witness, having already subscribed the will in the presence of the testator but out of the presence of the second witness, may acknowledge his signature in the presence of the testator and the second witness, and such acknowledgment, if there be no indicia of fraud or misunderstanding in the proceeding, will be deemed a signing by the first witness within the requirement of Code, 41–1–3, that the witnesses must subscribe their names in the presence of the testator and of each other.

and technical construction to defeat a will where the capacity and intention is plain and where by fair and reasonable intendment the statute may be held to have been complied with, and such is the case here. *Id.* at 298, 266 P. 630.

We also specified, in syllabus point two of *Wade*, that "[w]hether witnesses to a will have subscribed the same in the presence of the testator and of each other, as required by statute, is a question of fact to be determined in each case from the circumstances thereof." Summary judgment is inappropriate where there is a dispute regarding the conclusions to be drawn from evidentiary facts. *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 59, 459 S.E.2d 329, 336. Thus, the majority could have legitimately concluded that summary judgment was inappropriate and that the issue of compliance with the statute was a question of fact to be determined by the jury. I could have accepted such reasoning far more readily than that employed by the majority in its swift eradication of Mr. Miller's legal right to convey his estate in the manner of his own conscious choosing.

The majority strains the logical definition of "in the presence" as used in the operative statute. The legal concept of "presence" in this context encompasses far more than simply watching the signing of the will, which is the technical, narrow interpretation of the word apparently relied upon by the majority. Where the attestation of the will by the witnesses occurred within the same room as the testator, there is, at the very minimum, prima facie evidence that the attestation occurred within the "presence" of the testator. *See* 20 *Michie's Jurisprudence,* Wills § 34 (1993); Annotation, What constitutes the presence of the testator in the witnessing of his will, 75 A.L.R.2d 318 (1961).

*In re Demaris' Estate,* 166 Or. 36, 110 P.2d 571 (1941), involved a challenge to a will signed by a very ill gentleman, witnessed in another room by a physician and his wife thirty minutes after the testator signed the will. The court grappled with the question of whether the witnesses had complied with the statutory requirement that the witnesses sign in the presence of the testator. *Id.* at 39–40, 110 P.2d at 572. The court rejected a strict interpretation of the language of the statute, recognizing that the purpose of requiring the presence of the witnesses was to protect a testator against substitution and fraud. *Id.* at 62, 110 P.2d at 581. Rather, the court determined that "presence" did not demand that the witnesses sign within the sight of the testator, if other senses would enable the testator to know that the witnesses were near and to understand what the witnesses were doing. *Id.* The court concluded that "the circumstances repel any thought of fraud and speak cogently of the integrity of the instrument under review. The signatures of all three persons are conceded. The circumstances of the attestation are free from dispute." 166 Or. at 74, 110 P.2d at 586.

To hold the will invalid on a strictly technical flaw would "be to observe the letter of the statute as interpreted strictly, and fail to give heed to the statute's obvious purpose. Thus, the statute would be turned against those for whose protection it had been written." 166 Or. at 76, 110 P.2d at 586.

The majority embraces the line of least resistance. The easy, most convenient answer is to say that the formal, technical requirements have not been met and that the will is therefore invalid. End of inquiry. Yet that result is patently absurd. That manner of statutory application is inconsistent with the underlying purposes of the statute. Where a statute is enacted to protect and sanctify the execution of a will to prevent substitution or fraud, this Court's application of that statute should further such underlying policy, not impede it. When, in our efforts to strictly apply legislative language, we abandon common sense and reason in favor of technicalities, we are the ones committing the injustice.

I am authorized to state that Justice MAYNARD joins in this dissent.