Argued October 13; affirmed November 10, 1931; rehearing denied
January 5, 1932

In re Warren's Estate

HARRINGTON et al. *v.* SAX et al.

(4 P. (2d) 635)

284

*W. Lair Thompson*, of Portland (David E. Lofgren and McCamant, Thompson & King, all of Portland, on the brief), for appellants.

*John R. Latourette*, of Portland (E. J. Mendenhall, Walter E. Critchlow, and Latourette & Latourette, all of Portland, on the brief), for respondents.

BELT, J. The validity of the will of Mary C. Warren, deceased, is challenged upon the ground that it was not executed in the manner provided by law. The alleged will, dated November 29, 1926, was admitted to probate in common form on January 9, 1929. The attesting witnesses were Agnes A. Lair and Ed Mendenhall. The attestation clause is in regular form and recites the execution of the will in accordance with the statutory requirements. At probate, Mr. Mendenhall, a lawyer and the scrivener of the will, was unable to testify on account of serious illness. He died on August 10, 1929, a month prior to the time this contest was instituted. Mrs. Lair, the other subscribing witness, made the usual affidavit in support of the will. At contest, however, she asserts that at the time she signed the will as witness there were no signatures thereon and that Mary C. Warren never acknowledged or declared to her that the instrument in question was her will. There is no dispute in the testimony concerning the signatures of the subscribing witnesses nor that of the testatrix. It also appears without dispute that Agnes A. Lair signed this will at the request of

the testatrix and that the witness knew that she was called upon to attest the alleged execution of the will. The sole contention of contestants on appeal is that it does not appear from the record that the will was signed by the testatrix in the presence of the subscribing witnesses or that she acknowledged her signature thereto. The other grounds for contesting the will as alleged in the petition, viz, lack of mental capacity and undue influence, were abandoned.

It appears from the evidence that the testatrix went to the apartment house of her friend and lawyer, Mr. Ed Mendenhall, for the purpose of having him draw her will. After the instrument was prepared, Mendenhall, with the knowledge and consent of Mrs. Warren, went downstairs to get Mrs. Lair or her husband to witness it. Mrs. Lair says that when she came into the dining room Mrs. Warren was sitting at the table upon which were various papers and documents. She testifies that nothing was said by Mrs. Warren who sat with "her head in her hands" and "didn't look at me at all"; that Mendenhall did not read the attestation clause to her but merely told her to "sign here." After signing the will Mrs. Lair immediately went into the kitchen and "passed the time of day" with the wife of Mendenhall and then went downstairs.

Mrs. Mendenhall states that after the will was prepared she saw the testatrix with pen in her hand ready to sign the same but is not certain whether this was before or after Mrs. Lair signed it. She also heard her husband mention the necessity of having a witness and Mrs. Warren's reply that it was all right to go downstairs and get one. She states that, when Mrs. Lair came into the dining room, her husband, who was standing, said, "Here is Mrs. Warren's will" and that "she picked it up and took it and turned it around" to

examine it closely as "she could not see very good." She adds that after Mrs. Lair signed the will it was also signed by her husband and handed to Mrs. Warren who said, "I will put it away some place."

After the will was probated in common form, Mrs. Elizabeth Cullison, one of the contestants and a sister of the testatrix, made inquiry of Mrs. Lair as to the manner in which this will was executed. Mrs. Lair, upon her own suggestion, went with Mrs. Cullison to the courthouse at Oregon City to examine the affidavit made by her when the will was admitted to probate. She says that only two questions were asked her by Judge Campbell in the probate proceedings; that she had forgotten the exact form of these two questions; and that she desired to see the affidavit to refresh her memory.

E. J. Mendenhall, a brother of Ed Mendenhall, in response to the question, "Tell the court what questions Judge Campbell asked her," testified:

"As I said in my statement before, I can't recall all of them, but he pursued the form used—the questions usually used in the probating of a will, as to the age, competency, and whether or not—that is to the best of my recollection—whether or not it was—the witness signed in her presence and at her request, and she signed in their presence. Or words to that effect. I know he asked all those questions.

"Q. What did she answer?

"A. She answered yes to everything that was said. He read that to her before she signed it and asked if she signed it."

On direct examination, when asked about being a witness when the will was probated, she answered, "I did not do any testifying."

■ It is well established that the testimony of a subscribing witness who seeks to impeach the due execu-

tion of a will should be received with caution and viewed with suspicion: *Kuehne v. Malach,* 286 Ill. 120 (121 N. E. 391) ; *Jenkins v. White,* 298 Ill. 502 (131 N. E. 634) ; 28 R. C. L. 370; 40 Cyc. 1309. As the late Justice McBride so aptly stated in *Re Estate of Shaff,* 125 Or. 288 (266 P. 630), such testimony "should be taken cum grano salis." As stated in *Stevens v. Leonard,* 154 Ind. 67 (56 N. E. 27, 77 Am. St. Rep. 446) :

"A subscribing witness may, it is true, be heard to impeach the will; but, if he assumes that attitude toward it, he does so at the peril of his reputation for candor and veracity. Such an attitude is not merely inconsistent with the position he has voluntarily taken, but is suggestive of fraud and double dealing. It involves a betrayal of confidence, and, if the witness is believed, in some instances, it may be attended with the most distressing consequences. The credibility of the witness becomes at once a matter of serious inquiry, and his desertion of his position as a sustaining witness is an important fact for the consideration of the jury."

Particularly does this rule apply where the testimony of the subscribing witness is in favor of the will at probate and against it at contest: Page on Wills (2d Ed.), § 678. It is, indeed, an anomalous situation where a witness solemnly declares that a will has been executed in keeping with all of the formalities of the law and then later, upon oath, positively asserts that his previous recitals were false.

The proponents of the will established a prima facie case as to its due execution when, together with the attestation clause, the genuineness of the signatures of the testatrix and subscribing witnesses was shown. The attestation clause reciting the due execution of the will creates a strong presumption in its favor which prevails unless overcome by clear and convincing evi-

dence. It does not follow that, because some or all of the subscribing witnesses testify adversely to the execution of the will, it can be said as a matter of law that such presumption has been overcome: *German Evangelical B. Church v. Reith* (Mo.), 39 S. W. (2d) 1057; *In re Seymour's Will* (N. J.), 114 Atl. 799; *Jenkins v. White* (Ill.), supra; *Re Schneider's Will* (Wis.), 235 N. W. 412; Alexander's Commentaries on Wills, § 507. The law does not leave a will wholly at the mercy of subscribing witnesses. If the rule were otherwise, property rights might be made to depend upon the faulty memories and improper motives of subscribing witnesses.

■ In the instant case the recitals in the attestation clause and the averments in the affidavit made at probate strongly refute the idea that the testatrix did not sign the will in the presence of the subscribing witnesses: *Skinner's Will*, 40 Or. 571 (62 P. 523, 67 P. 951).

■ We can not agree with the contention of counsel for appellants that the testimony of Mrs. Lair can not thus be impeached or discredited as she was a witness called by the respondents. This contention was made in *Newell v. White*, 29 R. I. 343 (73 Atl. 798), and the court said:

"Where a party is bound by law to produce a certain witness, such as a subscribing witness to a will, he is not deemed to vouch for his credit, and if such witness give damaging evidence against him, he may contradict him." Citing 29 Am. and Eng. Ency. Law (1st Ed.), p. 816.

Also see *German Evangelical B. Church v. Reith* (Mo.), supra; 40 Cyc. 2692; Underhill on Wills, § 212.

■ Whether this presumptive evidence relative to the execution of the will was overcome by the evi-

dence of the subscribing witness presents a question of fact. It is quite apparent that Mrs. Lair was a hostile witness as evidenced by the evasive manner in which she testified in response to the questions of counsel for the proponents of the will who were bound to call her as a witness. Her testimony in some respects is highly improbable, as witness her statement that the testatrix did not look up or say anything to her when she entered the room at the time of the execution of the will, although she was well acquainted with her. Her testimony relative to the proceedings at probate is entirely discredited by her affidavit and by the testimony of Mendenhall relative to the questions put to her by Judge Campbell as to the manner in which the will was executed. It appears from the record that she was near-sighted and wore thick-lensed glasses which might account for her statement that she did not see the signature of the testatrix on the will. Her testimony as to whether the testatrix's signature was on the will at the time she signed it as a witness is not positive and convincing as shown by the following portion of the record:

"Q. Do you know whether Mrs. Warren's name was on there or not?

"A. There was none there when I signed it. There was no names there when I signed it.

"Q. Mrs. Warren's name is away up at the top of the page and yours below.

"A. There was no names around my name.

"Q. Then you can't say positively whether Mrs. Warren's name was up at the top or not, can you?

"A. No, sir; I can not."

Mr. Mendenhall was an experienced lawyer and it seems highly improbable that he would have Mrs. Lair sign as a subscribing witness before the testatrix had signed the will. The proponents of the will are, indeed,

unfortunate that his lips are now sealed in death. We are not inclined to review the testimony further but are content to say that the evidence of the subscribing witness is, in our opinion, not sufficient to overcome the presumptive evidence and the evidence of Mrs. Mendenhall concerning the execution of the will. The trial court had the advantage of seeing and hearing the witnesses and its findings are entitled to great weight.

We see no merit in the contention that the answer of the defendants to the petition did not put in issue the execution of the will.

The decree of the lower court admitting the will to probate and dismissing the petition of the contestants is affirmed.

BEAN, C. J., BROWN and KELLY, JJ., concur.