Argued May 24; affirmed June 27, 1944

IN RE WADE'S ESTATE
MELVIN ET AL. *v.* LYSTER ET AL.
(149 P. (2d) 947)

*Mark V. Weatherford,* of Albany (Weatherford & Thompson, of Albany, on the brief), for appellants.

*E. R. Woods,* of Corvallis (Wallace G. Benson, of Reedsport, on the brief), for respondents.

Before BAILEY, Chief Justice, and BELT, KELLY, BRAND and HAY, Associate Justices.

KELLY, J. This is a proceeding to test the validity of the last will and testament of Elizabeth C. Wade. The contestants are children of deceased children of decedent. These grandchildren were expressly disinherited by the terms of the will in suit.

As shown by the inventory, the appraised value of the estate was $35,109.20.

After directing the payment of debts and funeral expenses, the deceased, by her will, bequeathed to her daughter, Clementine Dailey, a note theretofore executed by said daughter in the sum of $1,000.00.

In the third, fourth and fifth paragraphs of the will the disinherited grandchildren, being twelve in number, are each named. Four of them are therein stated to be the children of testatrix' deceased daughter Sophia Melvin; five of them are described as the children of testatrix' deceased son, Richard Lyster, and three

others are designated as children of testatrix' deceased daughter Ada Murphy.

By the sixth paragraph of the will, the eight living children of testatrix are made residuary legatees and devisees in equal parts, share and share alike.

Testatrix also named her son Harry J. Lyster and her daughter, Kathleen (misspelled Cateline) Dailey as the executor and executrix of her last will and testament to serve without bonds.

The will is dated July 27, 1937. Testatrix died on April 1, 1941. The will was admitted to probate on May 2, 1941. This proceeding to set it aside was instituted on April 9, 1942. On August 3, 1942, by stipulation of the parties this proceeding was transferred to the circuit court of Benton County. The trial was had in the circuit court on January 18, 1943. On December 20, 1943, a decree was rendered by the trial court declaring the will in suit to be the last will and testament of said Elizabeth C. Wade, deceased, admitting the same to probate in solemn form and remanding the cause to the county court to proceed with the probate of said will in solemn form. From this decree, contestants have prosecuted this appeal.

Three grounds are assigned for this contest, namely, improper execution of the will, undue influence, and mental incapacity.

In November, 1936, while visiting with her daughter, Kathleen Dailey, near Reedsport, Oregon, testatrix fell and fractured her hip. On November 13, 1936, testatrix was taken to a hospital in North Bend, Oregon, where she remained until about June 5, 1937; then she returned to Corvallis, Oregon, where she lived until her death on April 1, 1941. Following her accident, when she was not in bed, most of her time was spent in a wheelchair. After her return to Corvallis, as stated,

testatrix continued to live with her daughter, Ella I. Hunt, in Corvallis, with whom she had been living since August 1933.

As stated, one of the grounds upon which this contest is based is that the will was not executed in the manner provided by law. The attesting witnesses were Laura M. Layman and Agna Holter.

The attestation clause is as follows:

"The above instrument, consisting of this and one other page, was at the date thereof signed, sealed, published and declared, by the said Elizabeth C. Wade as and for her Last Will and Testament, in the presence of us, who, at her request and in her presence and in the presence of each other, have subscribed our names as witnesses thereto."

At the contest, however, Laura M. Layman testified that she did not see testatrix sign the will, but when she, the witness, signed the paper, she saw testatrix' name on the paper. This witness also testified that Mrs. Hunt had asked witness if she would sign testatrix' will and that immediately before witness came into the room where testatrix was sitting, Mrs. Hunt asked witness if she would come, saying that the lawyer would be there and wanted witness to come and sign it then.

Witness, Agna Holter, testified that she did not see testatrix sign the will. She testified that she did see witness Laura M. Layman sign it. Witness Holter also testified that both she and witness Layman were there and both signed the will at the same time, and that testatrix was sitting at the table when witness Holter came in.

Mrs. Hunt testified that when the will was executed, Mr. E. R. Woods, the attorney who had prepared the

will, the testatrix, Mrs. Holter, Mrs. Layman and Mrs. Hunt, herself, were present in the room; that testatrix signed the will with Mr. Woods' pen while the attesting witnesses were standing at the end of the table to the left of testatrix and Mr. Woods was standing at the end of the table at testatrix' right, and that after testatrix signed her will, the attesting witness signed with the same pen that testatrix had used. This is corroborated by the testimony of Mr. Woods. We quote from his testimony:

"Q I hand you Proponents' Exhibit A and ask you what that is.

A I saw this signed. I am not sure whether this was initialed at the time they made the affidavit or not. I am not sure about the initialing of that will, but that was signed at that time.

Q That is the instrument you prepared?

A Yes, that is the instrument I prepared, and that was signed there by Mrs. Wade and the witnesses, Mrs. Holter and Mrs. Layman, and in addition to those, Myself and Mrs. Hunt were present."

■■■ Upon the question, whether the record before us discloses that the will in suit was executed in the manner provided by law, there is such a similarity between this case and the case of *Harrington v. Sax,* wherein the opinion of this court was rendered by Mr. Justice Belt, that the writer feels justified in quoting from that opinion.

"It is well established that the testimony of a subscribing witness who seeks to impeach the due execution of a will should be received with caution and viewed with suspicion: Kuehne v. Malach, 286 Ill. 120 (121 N. E. 391); Jenkins v. White, 298 Ill. 502 (131 N. E. 634); 28 R. C. L. 370; 40 Cyc. 1309. As the late Justice McBride so aptly stated in Re Estate

of Shaff, 125 Or. 288 (266 P. 630), such testimony 'should be taken cum grano salis'. As stated in Stevens v. Leonard, 154 Ind. 67 (56 N. E. 27, 77 Am. St. Rep. 446):

'A subscribing witness may, it is true, be heard to impeach the will; but, if he assumes that attitude toward it, he does so at the peril of his reputation for candor and veracity. Such an attitude is not merely inconsistent with the position he has voluntarily taken, but is suggestive of fraud and double dealing. It involves a betrayal of confidence, and, if the witness is believed, in some instances, it may be attended with the most distressing consequences. The credibility of the witness becomes at once a matter of serious inquiry, and his desertion of his position as a sustaining witness is an important fact for the consideration of the jury.'

Particularly does this rule apply where the testimony of the subscribing witness is in favor of the will at probate and against it at contest. Page on Wills (2d Ed.), § 678. It is, indeed an anomalous situation where a witness solemnly declares that a will has been executed in keeping with all of the formalities of the law and then later, upon oath, positively asserts that his previous recitals were false.

The proponents of the will established a prima facie case as to its due execution when, together with the attestation clause, the genuineness of the signatures of the testatrix and subscribing witnesses was shown. The attestation clause reciting the due execution of the will creates a strong presumption in its favor which prevails unless overcome by clear and convincing evidence. It does not follow that, because some or all of the subscribing witnesses testify adversely to the execution of the will, it can be said as a matter of law that such presumption has been overcome: German Evangelical B. Church v. Reith (Mo.) 39 S. W. (2d) 1057; in re Seymour's Will (N. J.) 114 Atl. 799; Jenkins v. White (Ill.) supra; Re Schneider's Will (Wis.) 235

N. W. 412; Alexander's Commentaries on Wills, § 507. The law does not leave a will wholly at the mercy of subscribing witnesses. If the rule were otherwise, property rights might be made to depend upon the faulty memories and improper motives of subscribing witnesses.

In the instant case the recitals in the attestation clause and the averments in the affidavit made at probate strongly refute the idea that the testatrix did not sign the will in the presence of the subscribing witnesses: Skinner's Will, 40 Or. 571 (62 P. 523, 67 P. 957).'' *In re Warren's Estate (Harrington v. Sax)*, 138 Or. 283, (4 P. (2d) 635, 79 A. L. R. 389).

■ Contestants urge that there is a distinction between those cases wherein the attesting witnesses appeared in court and testified in support of a will when first offered for probate, and the instant case wherein only affidavits made before a notary public by the attesting witnesses comprise the proof upon which probate of the will was sought and obtained. No such distinction was made in the case from which the foregoing quotation is made despite the fact that the statutory provisions are the same now as they were when Mrs. Warren's will was under attack. We know of no reason why we should modify or disregard the principles of law so well stated by Mr. Justice BELT in *Harrington v. Sax*, supra.

■ We are not impressed by the suggestion that there was no indication or statement emanating from testatrix in the presence of the attesting witnesses to the effect that the document before them was the last will and testament of testatrix. Both attesting witnesses testify that Mrs. Hunt had expressly told them that her mother, the testatrix, desired to have them witness the execution of her will. Mrs. Hunt so testified.

Mrs. Hunt also testified that immediately upon the execution of the will, the testatrix asked the attorney what his fee was and upon being advised, then and there paid the attorney for his services. This action was immediately preceded by the statement made by the testatrix to the effect that "it was all over but financing and finishing up". The testimony of Mrs. Hunt in that regard is not contradicted or disputed.

It follows that in our opinion the will in suit was executed in the manner provided by law.

■ As to the charge that undue influence was exerted upon testatrix, the most that can be said in support of that contention is that for almost four years before the execution of the will the testatrix lived with her daughter Mrs. Hunt; that testatrix was advanced in years, being 87 years of age when she executed her will and 91 years at the time of her death. Mrs. Hunt is shown to have waited upon her mother and to have carried out her mother's wishes, but the record is barren of any indication that any restraint or importunity was employed. Nothing could be more natural than that the daughter would execute errands for her crippled mother. This was done when Mrs. Hunt would advise Mr. Woods that her mother desired him to attend to certain matters of business. Pursuant to such information, Mr. Woods on several occasions called upon Mrs. Wade and attended to the matters involved. In the preparation of the will the same course was pursued. It appears from the testimony of Mr. Woods and Mrs. Hunt that the first draft of the will contained an error in spelling a proper name. Mr. Woods took the paper to his office and in part at least made the correction. According to Mr. Woods and Mrs. Hunt, the draft of the will was in the possession of testatrix

for two or three days before she executed it. Mrs. Hunt testified that during that time testatrix kept reading and studying it.

What testatrix' reasons were for disinheriting her grandchildren is not shown. Their treatment of her or their attitude toward her is not reflected in the record. To say that no justifiable reason impelled the course taken by testatrix toward them would be to enter the realm of speculation, conjecture and guesswork.

During the interval of nearly four years after the execution of the will before the death of testatrix, certainly abundant opportunity was afforded for testatrix to change the provisions of her will and nothing is shown to have occurred indicating any desire on testatrix' part to make any change therein.

We therefore hold that no undue influence upon testatrix has been shown.

The only affirmative testimony upon the mental condition of testatrix is to the effect that at the time of the execution of her will she was endowed with normal mentality.

The argument is advanced that because the names of some of her twelve grandchildren by her deceased children were procured by Mrs. Hunt at the instance of Mr. Woods, we should conclude that testatrix was without testamentary capacity. We cannot concur in this argument. Experience teaches that individuals may be well known and their characteristics understood and remembered while their initials or given names may be in doubt or even forgotten.

The decree of the circuit court is affirmed..