This is an appeal from an order denying petition of one Helen Brown for the revocation and probate of the will of Marie Choiniere, deceased, and denying probate of a purported earlier holographic will.
Testatrix died in the St. James Hospital at Butte on May 20, 1942. On the same day Kenneth Christie filed petition for probate of her will, the same being admitted to probate without contest on June 1,, whereupon Christie, named therein as executor, qualified as such. Under the terms of this will. Mrs. Sam J. Bukvich was the principal beneficiary.
On July 26, 1942, Helen Brown, contestant, a resident of Idaho, filed her petition for revocation of the probate of the will in which Mrs. Bukvich was named as chief beneficiary, hereinafter referred to as the Bukvich will, and requested the probate of a purported holographic will in which she was named as beneficiary, and asked that the public administrator be appointed administrator de bonis non. This will was in words and figures following: "16 December 1941. I appoint my niece Helen Brown my legataire without bond. Marie Choiniere."
The petition for revocation of the Bukvich will, in so far as here pertinent, substantially alleged that the deceased at the time of her death was a widow with no children, grandchildren *Page 67 
or other descendants or heirs at law surviving her; that at the time of the making of the purported will the said Marie Choiniere was not of sound or disposing mind and was not competent to make the last will or testament at the time of its execution, and was not free at that time from undue influence or fraud; that there was no due or legal execution of said will by the decedent or by the subscribing witnesses; that the said purported will was not acknowledged nor attested nor witnessed in accordance with the requirements of the laws of Montana and that said decedent never did at any time declare to either of the subscribing witnesses that the said instrument was her will or request them to sign the same as witnesses; that at no time did the decedent know the contents of the will.
Further, that at the time of making and signing of the purported will the decedent was not of sound or disposing mind in that previous to the hour when the said will was signed the said decedent, then being of the age of 75 years, was seized by a great and violent pain and suffering of mind and body caused by some sickness in the nature of a blood clot in the bowels, from which she died approximately 28 hours after the first attack; that such pain and suffering was sufficient to and did overpower completely the reason and will of said decedent throughout the day of May 19; that during said day there were administered to her large and overpowering doses of morphine and other opiates and sedatives; and that by the time the said purported will was written and presented to her for signature and at the time that she signed the same, such large and overwhelming doses of morphine and other opiates to allay pain had been administered to her that all of her powers of reasoning and of will were completely overcome and suspended, which condition existed at all times from 3 o'clock a.m. of May 19, up to the time that the said will was presented to her and signed. Further, that for a period of one month previous to the death of Marie Choiniere and before the signing of said will, Mrs. Sam J. Bukvich, beneficiary, had exercised undue influence and control over the deceased by making false statements to her that *Page 68 
petitioner had turned against her and abandoned her, although the deceased had for many years cared for petitioner and treated her as a daughter, during which time petitioner had shown toward deceased affection, fondness and respect; that petitioner, being the niece of Oliva Choiniere, decedent's husband, had for many years lived during her vacations from convent school at the house of the decedent and her husband and behaved toward them with the same respect and affection as if they had been her parents, which affection was mutual.
It is further alleged that on or about December 16, 1941, the deceased being of sound and disposing mind and not under duress or fraud or undue influence, made, executed and published her last will and testament, being the holographic will above set forth; that decedent was born in France and resided there until she was 15 years of age and spoke the French language more fluently than English, often interspersing French words into her sentences when attempting to speak English; that in French the word "legataire" means both legatee and devisee; that in French common law, i.e., the Code Napoleon, the difference between legatee and devisee is not expressed; that by using the word "legataire" the deceased intended that Helen Brown was to be legatee and devisee of all of her property.
The Bukvich will, including the attestation, on its face appears to have been executed in accordance with all statutory requirements.
After a motion to strike portions of the petition and a demurrer had been overruled, the contestee Kenneth Christie, named as executor in the Bukvich will, filed his answer denying all of the material allegations upon which petitioner based her demand that probate of that will be revoked. The hearing was concluded before the Hon. Jeremiah J. Lynch, judge of the district court, on March 3, 1943. Thereafter findings were adopted, and judgment made and entered as above indicated.
The question for determination is as to whether the record[1] contains substantial evidence to sustain the findings and judgment of the trial court. (Sanders v. Lucas, 111 Mont. 599, *Page 69 111 P.2d 1041; In re Bright's Estate, 89 Mont. 394,300 P. 229.)
Errors assigned are findings:
1st. That at the time of executing the will testatrix was of sound and disposing mind and memory, and competent to dispose of her property by will.
2nd. That at the time testatrix signed the will its contents were known and approved by her.
3rd. That testatrix signed the will in the presence of the subscribing witnesses, and at that time declared to them that it was her will and at her request they signed their names as witnesses in her presence and in the presence of each other.
4th. That Mrs. Sam J. Bukvich (the chief beneficiary) did not solicit testatrix to make said will, or in any manner influence her to do so, or influence her at all as to the disposition of her property; that the said will was her free act and conformed to her wishes and was not the product of any undue influence exercised upon her by anybody.
We address our first inquiry to the question of whether or not contestant overcame, by substantial evidence, the presumption of due execution raised by the proving of the will and its admission to probate. It should be borne in mind that this is a contest after probate, and it is conceded that the will was signed by the testatrix. Under similar circumstances, this court In re Silver's Estate, 98 Mont. 141, 38 P.2d 277, 282, said: "The fact that the will had been proved and admitted to probate, and that the attestation clause thereto recites that all was done that should have been done, coupled with the fact that the will was certainly signed by the testator * * * raises a presumption of due execution which could be overcome only by clear and satisfactory evidence." (In re Miller's Estate, 37 Mont. 545, 97 P. 935; Ross v. Taylor, 39 S.D. 608, 165 N.W. 1079; In re Mendenhall's Will, 43 Or. 542, 72 P. 318, 73 P. 1033; In re Bragg's Estate, 106 Mont. 132, 76 P.2d 57.)
Dr. Pat Kane, one of the subscribing witnesses, did not testify at the trial. Mrs. Ray Garland, the other subscribing witness, *Page 70 
testified that she had signed the will as a witness, in the presence of testatrix and Dr. Kane, in room 215 of St. James Hospital in Butte on the afternoon of May 19, 1942; that she had done so at the request of Mr. Christie; she did not hear anyone reading a will, and did not remember seeing testatrix read the will; that she did not remember whether or not testatrix asked her to sign the will, but that she didn't think so; that she saw Dr. Kane sign the will, and thinks that she saw testatrix sign; that she did not remember hearing testatrix say, "This is my will." On cross-examination she testified that she was interrogated by both Judge Lynch and Mr. Henningson at the hearing on petition for probate of the will, and signed a document entitled "testimony of subscribing witness on Probate of Will" in the Marie Choiniere estate, and that the facts testified to at the hearing were within her memory. The document signed by her was in a form commonly used for such purpose, stating that the will was signed by the decedent in the presence of herself and the other subscribing witness at the request of the decedent after decedent had declared the instrument to be her last will and testament.
Certainly Mrs. Garland's testamony is not sufficient to overcome the presumption of due execution. To the contrary, it tends to support that presumption. As is said by this court In re Miller's Estate, 37 Mont. 545, 97 P. 935, 941: "Dr. Townshend testified that he did not hear her say anything about making a will, and that she did not ask him to sign as a witness. His memory, however, is at variance with the attestation clause of the will. It is is not essential that the testator should expressly ask the subscribing witness to sign or expressly declare the instrument to be his will. All the attending facts and circumstances should be considered in order to determine whether the statute has been substantially complied with so as to carry out the intent with which it was adopted." (And see In re Silver's Estate, supra.)
The witness Nell McCarthy testified that she was a patient in the same room with testatrix on May 19, 1942, their beds being *Page 71 
about two feet apart; that she did not at any time that day hear a will or other paper read, or at any time hear Mrs. Choiniere say to anyone, "This is my will" or "last will," and did not hear her ask anyone to sign a will. On cross-examination she testified as to a conversation going on in the room but did not pay attention and did not remember what was said.
The burden of overcoming the assumption of due execution was[2] upon contestant, and she failed to sustain that burden by producing clear and satisfactory evidence that the will was not duly executed in accordance with statutory requirements. The testimony of the witness Christie (for contestees) tended to substantiate at least one of the elements of due execution. His testimony was to the effect that after he took the will to the hospital it was handed to testatrix, who said, "This is the paper I sent you to get; this is my will." If several witnesses were available, as contestant suggests, it is difficult to understand why they were not called to challenge the sufficiency of the execution of the will; the testimony of the second subscribing witness should have been particularly valuable if contestant's contention is well-founded. The trial court's finding in this respect was warranted.
Contestant maintains that the uncontradicted evidence[3] established that testatrix at the time she signed the will was of unsound mind and incompetent. In the face of the presumption of due execution of the will (including the mental capacity of testatrix) contestant attempts to shift the burden of proof to contestees. In spite of availability of witnesses who might have testified as to her mental condition, contestant was satisfied to rely upon the testimony of one expert, Dr. McMahon, whose opinion was given in response to a hypothetical question. The trial court was justified in holding that this alone was insufficent to overcome the presumption to the contrary and other evidence before it. Dr. McMahon did not see the deceased at the hospital, his observations being based upon an examination of the hospital chart and upon testimony of Dr. McGill, the attending physician. His testimony consists largely of generalizations *Page 72 
and is not entirely convincing so far as this particular case is concerned. He came no closer to a positive opinion than to say that from a study of the chart he did not think the deceased was of sound mind. This was based, in part at least, upon the premise that testatrix had refused to submit to an operation knowing that without it she could not live. Other evidence tends to show that her refusal to have an operation was deliberate and that such determination was formed some time prior to her last confinement. This witness concluded from the chart and from Dr. McGill's testimony that testatrix was in some degree of shock, and stated that he did not think that "anybody in shock is mentally 100 per cent." This evidence is not clear and satisfactory, especially when contradicted by the facts that testatrix was sufficiently lucid to request Christie to obtain her will and bring it to the hospital; to examine the instrument and recognize it as her will; and to sign and date it in the presence of witnesses. It is significant that the two doctors who examined and attended testatrix were not called upon for opinions as to the soundness of her mind, although Dr. McGill was called as a witness for contestant for other purposes. Undoubtedly the opinions of these physicians would have been stronger and more satisfactory than that of Dr. McMahon, and under Sec. 10672, Revised Codes of 1935, the trial court might very properly have viewed his testimony with distrust. Full and complete evidence of the physical and mental condition of the testatrix, and of her actions and reactions, immediately prior to and at the time of the signing of the will, was before the trial court. In our opinion this evidence was sufficient to support the finding that testatrix was of sound and disposing mind and memory and competent to dispose of her property by will. Consequently the finding must stand. In passing, we remark that allegations of the petition to the effect that testatrix' powers of reasoning and of will were overcome by the administration of large doses of morphine and other sedatives were wholly unsustained.
Next is urged error in the finding that Mrs. Sam Bukvich did not solicit testatrix to make the will, or in any manner *Page 73 
influence her to do so, or influence her at all as to the disposition of her property; that the said will was her free act and conformed to her wishes and was not the product of any undue influence exercised upon her by anybody.
A thorough study of the record establishes to our satisfaction[4] that the trial judge was warranted in finding that no undue influence was exercised upon the testatrix, unless such must be presumed from the fact of the preparation of the will by Daniel Bukvich, the son of the principal beneficiary. From his testimony it appears that his participation in the preparation of the will was at the request, or even the insistence, of testatrix, and that its provisions were in strict accordance with her directions. The record is free of proof of influence upon testatrix in the disposition of her property by either Daniel Bukvich or his mother. But contestant argues that undue influence must be presumed from the fact that the son of the chief beneficiary performed the mechanical preparation of the will while an intimate relationship existed between him and the testatrix. Such presumption, if one existed, was injected into the case by testimony of Mrs. Bukvich, a witness for contestant. The testimony of Daniel Bukvich, called by contestees, effectively overcame any such presumption, and the court's finding as to undue influence finds ample support in the record. Contestant failed to substantiate allegations of the petition of false statements made by Mrs. Bukvich to testatrix that the petitioner. Helen Brown, had turned against her and abandoned her.
The last material question raised is on the finding that at the time testatrix signed the will its contents were known and approved by her. No useful purpose would be served by a review of the testimony of the Bukvichs, mother and son, which, taken as a whole, tends to establish that the will, as probated, contained every provision directed by testatrix. The testimony of the witness Christie, by itself, is sufficient to support the finding. This is to the effect that after he delivered the instrument to testatrix at the hospital she examined it thoroughly and stated that it was her will. *Page 74 
In cases of this character the findings of the trial court will not be disturbed where the record contains substantial evidence upon which they may be sustained. Or, putting the rule another way, when the evidence furnishes a substantial basis for the findings they will be allowed to stand. Lewis v. Bowman,113 Mont. 68, 121 P.2d 162; In re Silver's Estate, supra; Sanders v. Lucas, supra.
A considerable portion of contestant's brief is directed to argument as to the validity and meaning of the holographic will, and to the relationship between contestant and testatrix as expressive of the latter's intentions in the disposal of her property. Incidentally, contestant's testimony regarding such expressed intention is inconsistent with the meaning of the holographic will as urged. In view of the provisions of Sec. 6998, Revised Codes of 1935, and of our approval of the trial court's findings with respect to the Bukvich will, these questions need not concern us.
There being no error in the findings objected to, the judgment is affirmed.
Chief Justice Johnson, and Associate Justices Morris, Adair and Angstman concur.
Petition for rehearing denied March 24th, 1945. *Page 75