[File No. 7224]

IN THE MATTER OF THE ESTATE OF ROBERT BAUR, Deceased, Henry C. Baur, Respondent, v. ROBERTA WEST, Mary Ogle, Carrie Taylor and Zoe Baur, Appellants.

(54 NW2d 891)

Opinion filed September 25, 1952

*P. M. Clark,* for appellants.

*C. D. Aaker,* for petitioner and respondent.

*C. D. Aaker,* for respondent.

Burke, J. The petitioner, Henry Baur, petitioned the County Court of Renville County to admit to probate the last will and testament of his deceased brother, Robert Baur. The will named Robert M. Baur, a nephew of the testator and a son of the petitioner, as the sole devisee. The respondents, Mary Ogle, Roberta West, Carrie Taylor and Zoe Baur, all daughters of the testator, filed an answer to the petition, alleging; 1st, that the purported will could not be admitted to probate because the testator had never published and declared to the witnesses to the instrument, that such instrument was his last will; and 2nd, that the petitioners, in any event, are entitled to share in the estate of Robert Baur in the same manner as if he had died intestate for the reason that they, the children of Robert Baur, were not mentioned in the will and it did not appear that the failure to mention them was intentional.

After a hearing, the County Court denied the petition that the will be admitted to probate. The petitioner appealed to the District Court from the order denying the petition. After a trial anew upon all the issues, the District Court entered judgment reversing the County Court and directing that the instrument in question be admitted to probate as the last will of Robert Baur, and directing that the daughters of the testator be excluded from participation in the estate. The instant appeal is from that judgment. It is contended by appellants on this appeal that the findings of the trial court that the will was published and that the failure of the testator to mention his children was intentional, are contrary to the evidence. We shall consider first the law and the evidence concerning publication.

Section 56-0302 NDRC 1943 provides:

"(1) . . .

(2) . . .

(3) The testator, at the time of subscribing or acknowledging the same, must declare to the attesting witnesses that the instrument is his will;

(4) . . .

(5) . . ."

Section 56-0307 NDRC provides:

"No will is valid unless executed according to the provisions of this chapter, or according to the law of the place in which it was made, or in which the testator at the time was domiciled."

It is a well established rule in this state that section 56-0307, supra, requires a compliance with the provisions of 56-0302, supra, and if a will is executed without such compliance, it is invalid. Moody v. Hagen, 36 ND 471, 162 NW 704, LRA1918F 947, Ann Cas 1918A 933; Collins v. Stroup, 71 ND 679, 3 NW2d 742.

The will is short. It is all contained upon one page and we think it will be helpful to set it forth at length. It is as follows:

## "LAST WILL AND TESTAMENT

I, ROBERT BAUR, of Sherwood, North Dakota, being of sound mind, memory and understanding, do hereby make, pub-

lish and declare the following as and for my last Will and Testament:

FIRST: I direct my executor hereinafter named to pay all of my just debts and funeral expenses as soon as possible after my decease.

SECOND: All the rest, residue and remainder of my estate, whether real, personal or mixed, and wheresoever situated, I give, devise and bequeath unto my nephew, Robert M. Baur, of Erie, Pennsylvania, absolutely and in fee simple, for his own use and behoof forever.

THIRD: I nominate and appoint my brother, Henry C. Baur, of Erie, Pennsylvania, my executor of this my last Will and Testament.

IN WITNESS WHEREOF I have hereunto set my hand and seal this 1st of November, 1948.

Robert Baur L. S. (signed)

Signed, sealed, published and declared by
the above named testator as and for his
last Will and Testament, in our presence,
at his request, and in the presence of each
other, we hereunto set our hands as attest-
ing witnesses:
W. A. Coutts (signed)
George Gehringer (signed)

Filed: 9 A. M.
April 2, 1949. J. H. Foster Judge
and Ex-Officio Clerk of Dist. Court,
Renville County, North Dakota."

The will is entirely in typewriting except the date of execution and the signatures. In the date, the day of the month and the month and the year were written in with pen and ink.

The petitioner identified the signature of the testator. Each of the subscribing witnesses testified as to the genuineness of his signature and one of them, the witness Coutts testified that the part of the date which was written with pen and ink was in his handwriting.

Both of the subscribing witnesses, however, testified that they

had no recollection of the occasion upon which they signed. The witness, Coutts, was, upon the date of the execution of the will, County Auditor of Renville County. The witness, Gehringer, was his deputy. Coutts, when asked if he was prepared to deny that Mr. Baur brought the instrument to his office and asked him to sign it, stated, "I don't deny it, but I don't recall it." "I don't remember who brought it in." When asked if Baur declared to him that the instrument was his last will and testament, he replied, "No he didn't. I can't remember who brought it in." The witness Gehringer, when asked if he knew, when or how it happened that he witnessed the will, answered, "No I don't." When asked if he had any recollection whatever of Baur's coming in and asking him to sign as a witness, he replied "No, I haven't." When asked if Mr. Baur stated that the instrument was his last will, he replied, "No he didn't."

In his memorandum opinion in the case, the trial judge said, "I am convinced that the subscribing witnesses are telling the absolute truth when they testify they have no recollection of the circumstances surrounding the execution of the instrument. They are officers in what, on November 1st of any year, would be a busy office. . . . The answers given by these witnesses tending to impeach the attestation clause were, I believe, prompted by their belief that answers of the kind given were necessary. Manifestly if the witnesses had no recollection whatever of the circumstances surrounding the execution of the instrument, and I believe they had no such recollection, they could not say whether this particular act or that particular thing had been done or had taken place at the time when the instrument in question was executed." Thus the trial court resolved the patent inconsistency in the testimony of these witnesses by finding that their statements that they had no recollection whatever of the transaction were true and that therefore their statements which tended to impeach the attestation clause were not entitled to any weight.

It seems to us that this *finding* of the trial court is amply sustained by the evidence. It is clear from the entire record that the witnesses' testimony that Mr. Baur did not tell them the instrument was a will, was not a statement of fact but a statement of opinion based upon their belief that if he had told them, they

would have remembered. The weight to be given to such a deduction is minimized by a glance at the will itself. It is all contained upon one page. It is entitled "Last Will and Testament" set forth in underlined bold type at the top of the page. The attestation clause above the witnesses' signatures is unusual in the sense that it does not appear upon most instruments the county auditor and his deputy would be asked to witness. It is almost unbelievable that men of experience, holding responsible positions, could have signed as witnesses to this will and not have known at the time that it was a will they were attesting. This is particularly true as to the witness Coutts who examined the instrument to the extent that he discovered it was undated and completed the date in his own handwriting. If they knew it was a will at the time, it would seem to us, that whether they learned that fact from observation or from being so informed by the testator, would have little effect upon their subsequent recollection of the transaction. On the other hand if they were so absorbed in other matters, or so inattentive to what they were doing that they did not notice the instrument was a will, it is also quite likely that they would not remember what was said at the time. We therefore adopt the trial court's finding that the witnesses' testimony that Mr. Baur did not tell them the instrument was a will is not entitled to any weight.

With this testimony eliminated there is no evidence, extraneous to the instrument itself, of whether Mr. Baur did or did not publish the instrument as his will. The attestation clause of the will is complete. It sets forth the fact of publication and the fact that the witnesses signed at the request of the testator. The witnesses, themselves, identified their signatures positively. We believe it to be an unvarying rule, that where the signatures of the attesting witnesses are established by unquestioned proof, the recitals of the attestation clause of due execution of the will are presumed to be true and can only be overcome by clear and convincing testimony. In re Monks' Estate, 48 Cal App2d 603, 120 P2d 167; Walters v. Heaton, 223 Iowa 405, 271 NW 310; In re Wallace's Estate, 158 Kan 633, 149 P2d 595; Poindexter's Administrator v. Alexander, 277 Ky 147, 125 SW2d 981; Van Meter v. Van Meter, 183 Md 614, 39 A2d 752; Morrow v. Board of Trus-

tees of Park College, 353 Mo 21, 181 SW2d 945; In re Lazzati's Will, 131 NJ Eq 54, 23 A2d 566; In re Akin's Estate, 41 NM 566, 72 P2d 21; In re Wade's Estate, 174 Or 531, 149 P2d 947; In re Rowlands' Estate, 70 SD 419, 18 NW2d 290; Moore v. Halberstadt, 246 Wis 263, 16 NW2d 819.

Since there is here no credible proof to impeach the attestation clause, it follows that the facts stated therein must be accepted as true and that the decision of the district court, that the will be admitted to probate, must be affirmed.

The remaining question is whether the trial court's finding, that the testator's failure to mention his children in the will was intentional, is supported by the evidence.

Section 56–0417 NDRC 1943 provides:

"When any testator omits to provide in his will for any child of his, or for the issue of any deceased child, unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator as if he had died intestate, and succeeds thereto as is provided in section 56–0416."

The omission to provide for a child or the issue of deceased children in a will merely raises a prima facie presumption that such issue were not intentionally omitted and such presumption is rebuttable by extrinsic evidence. Schultz v. Schultz, 19 ND 688, 125 NW 555; Hedderich v. Hedderich, 18 ND 488, 123 NW 276.

The testator was married in 1901. He was divorced in 1913. Four daughters were born to the marriage. At the time of the divorce there were one aged six, twins aged eight and one aged nine. From the record in the divorce action it appears that the wife had moved to Missouri with the children more than a year before the divorce action was commenced. The testator was granted the divorce upon the grounds of extreme cruelty and desertion. There is nothing in the record to show that the testator ever saw the children from the time of the divorce until his death.

In September, 1914, the testator made a will in which he made provision for his children and his brothers. However, Paragraph Five of this will provided:

FIFTH: I direct my said Trustee to use his best discretion in applying the income and proceeds of my estate for the support, education and maintenance of my children and I particularly direct him not to use any part of the said income or net proceeds for the support, education or maintenance of any child of mine, so long as the said child is receiving or accepting support or maintenance, of any kind, either directly or indirectly from my divorced wife, Amanda Baur, or any of her relatives. I further stipulate that such of my children as shall choose to leave Amanda Baur and come back to me and be with me at my death, shall participate in the distribution of my residuary estate, but not otherwise, on the same basis as my brothers."

In 1919, the testator left North Dakota and went back to Pennsylvania. There he lived with his brother, Henry, the petitioner herein, until 1921, when he returned to North Dakota. Before returning to North Dakota, he executed a new will in which he named Henry Baur as the sole devisee. Robert Baur thereafter lived alone on his farm in North Dakota. At all times the relationship between him and his brother Henry was cordial and fraternal. During the depression years Henry helped Robert by sending him checks from time to time and by paying his medical and hospital bills.

To a letter which the petitioner, Henry Baur, wrote to the testator in December 1941, there was appended a postscript which read:

"P. S. Many years ago you made a will, bequeathing all of your property to me. You have the right to change this will any time. If you still feel that way toward me, may I suggest that you leave your property to my son, your namesake, Robert M. Baur, instead of to me. What do you think?

H. C. B."

The testator replied to this letter in January 1942. In his reply he stated:

"I have studied over your letter a long time, for it seemed to me that you in the east care nothing about this property, and I had made up my mind to put some German couple on it (as soon as I myself was not able any more to work it) and just stipulate

that they keep taxes paid. I am feeling good but am getting along in years, if it any use to will it to my namesake it will be allright to do so, but I do not want any arrangement I make disturbed. (I do not wish to interfere with in your business in the east)."

When petitioner answered the foregoing letter he enclosed the will which is in question here. In his letter dated February 7, 1942 he said:

"I enclose a will for you to sign if you approve, & return to me. If you wish to write out just what you want done with the farm, send it along with the will, and you may be assured your wishes will be carried out. The will should have two witnesses."

The testator kept this will until November 1, 1946, before he executed it and returned it to the petitioner. He died in 1949.

We think this evidence amply supports the trial court's finding that the testator's omission to provide for his four daughters was intentional. All family relationship between the testator and his daughters was severed about thirty-five years before the will was executed. In the will which the testator made in 1914, he clearly expressed the intent that none of his children should share in his estate unless they became reconciled to him and returned to live with him. None of the children ever returned. In 1921, he made a new will in which he left his entire estate to his brother, Henry. Throughout the succeeding years until his death in 1949, he lived alone on his farm. During those years, the only family relationship shown by the record, was with his brother Henry, who gave him help on many occasions. Before the testator made up his mind to leave his property to his nephew he "studied a long time". The reason for his study was not consideration for his daughters, but consideration of whether his nephew would derive any benefit from the will and of his plan to turn his farm over to some German couple, possibly in return for providing him with a home in his declining years. After receiving the will from his brother in 1942, he kept it almost four years before executing it. Apparently, his plans for turning the farm over to a German couple never materialized because according to the evidence he lived alone until his death.

We think the reasonable inference from all of the evidence

is that testator's omission to make provision for his daughters was intentional. The judgment of the district court is affirmed.

MORRIS, C.J., and CHRISTIANSON and GRIMSON, JJ., concur.

SATHRE, J. did not participate.