In the Matter of the Estate of VIOLET WILLIAMS SWORDS, Deceased. THOMAS WILLIAMS, Contestant and Appellant, v. GEORGE WILLIAM SWORDS, II, ARMINDA J. SWORDS EVANS and DORIS M. SWORDS POPPLER, Proponents and Respondents.

No. 9413.
Submitted February 10, 1955. Decided June 4, 1955.
284 Pac. (2d) 674.

Wood, Cooke & Moulton and W. H. Bellingham & B. E. Longo, Billings, for appellant.

Wiggenhorn, Hutton, Schiltz & Sheehy, Billings, for respondents.

Mr. Longo and Mr. Ralph G. Wiggenhorn argued orally.

MR. JUSTICE ANGSTMAN:

This is an appeal from a judgment admitting the will of Violet W. Swords to probate. The facts giving rise to the controversy are these:

Violet Williams Swords died on the 1st day of November, 1952, at Billings. On November 14, 1952, George W. Swords, II, filed in the district court of Yellowstone County a petition for the probate of her will dated May 2, 1951. The petition alleged that the names of the devisees and legatees under the will were the following: James Williams of Raleigh, Illinois, a broth-

er, Thomas William of Gardiner, Montana, a brother, Gwendolyn Ickler of Aberdeen, South Dakota, a niece, Thomas Williams of Yonkers, New York, a nephew, Arminda J. Evans of Great Barrington, Massachusetts, Doris M. Poppler and George W. Swords, II, grandchildren. Hereafter we shall refer to the brother as Thomas Williams and the nephew as Tom Williams.

The subscribing witnesses to the will were Margaret A. Neal and J. H. Neal both of Billings.

On November 24, 1952, Thomas Williams, one of the devisees and legatees named in the will, filed his opposition to the probate of the will. The grounds of the opposition were that the will was not attested and executed in compliance with R.C.M. 1947, section 91-107, subdivision 2, in that the testatrix did not sign the instrument in the presence of the witnesses, nor did she acknowledge to them that the signature was hers or that it was made by her authority; that the witnesses did not sign the will as witnesses in the presence of each other and that the decedent Violet Swords did not declare or acknowledge the instrument to be her will. These allegations were put in issue by the answer.

The cause came on for hearing before the court sitting without a jury. The court found that the instrument in question was completely and exclusively composed, drafted and typed by Violet Williams Swords without counsel, assistance or intervention of any other person, and that at the time of drafting the will she was a woman of more than ordinary intelligence, was experienced in business affairs and was an accomplished secretary and office clerk and had had experience in drafting legal documents; that at the time of the drafting of the will she was the widow of George W. Swords, I, who had died about a year previously and who during his lifetime was admitted to practice law and whose work consisted of drawing legal papers; that the decedent Violet Swords during substantially all of her mature life had acted as the secretary and office clerk of the said George W. Swords, I, to whom she was married in 1927 after he had become divorced from his first wife; that George W.

168

Swords, I, died intestate leaving as heirs a son Lloyd by his first wife and the widow Violet Williams Swords; that Violet Williams Swords inherited one-half of the estate of George W. Swords, I, which said estate was appraised at about $54,000; she had other property of her own, making her entire estate about $90,000; that the total debts against her estate amounted to about $12,-000; that the three residuary heirs mentioned in the will are the three children of Lloyd Swords, the son of George W. Swords, I; during her lifetime the relationship between her and the three children was the same as though the children had been her own grandchildren;

That since a large part of the property left by the decedent had been acquired and accumulated by her by reason of her relationship as the wife of George W. Swords, I, she might reasonably have felt a moral obligation or trust to pass the property on upon her death to the blood descendants of George W. Swords, I;

That the will so drafted by decedent is in all respects a natural and just disposition of her property under all the circumstances.

The court further found that the decedent left surviving her two brothers, the contestant Thomas Williams, and James Williams; that during all of the years of the marriage of the decedent she had had little contact or communication with either of the brothers, both of whom reside at a distance; that decedent could not reasonably be expected to feel any sense of duty or obligation to leave either of them any substantial part of her property.

Thomas Williams is childless and James Williams has two children, Gwendolyn Ickler and Tom Williams. The will provides legacies for each of the brothers and for each of the children of James Williams in amounts reasonably appropriate under the circumstances.

The court found that after the will was drafted by decedent she signed it but not in the presence of the subscribing witnesses; that after the will was subscribed she requested J. H. Neal and Margaret Neal to serve as subscribing witnesses; that she made

known to them and declared to them that the instrument was her will and then and there acknowledged to them that it was made by her; that the two witnesses each signed as a witness to the will in the presence of the testatrix and in the presence of each other; that the subscribing witnesses were and are husband and wife, and for many years previous to signing the will as witnesses they had been close and intimate friends of testatrix and were especially selected by her to serve as subscribing witnesses, "she placing a special trust in them for such purpose"; that all of the facts stated in the attestation clause appearing at the end of the will are true. The court concluded: "that the court is not constrained to accept as true the testimony of the subscribing witnesses contradicting their written statements appearing in the attestation clause which was duly signed by them; that the facts and circumstances surrounding the preparation and execution of the will support the statements appearing in the attestation clause as against the oral denial by the attesting witnesses."

The court further found as conclusion of law that to accept the oral testimony of the subscribing witnesses as against their written statements in the attestation clause would serve to bring about a betrayal of confidence and a breach of trust on the part of the attesting witnesses to defeat the manifest intent and purpose of the decedent.

The court specifically found that the instrument offered for probate was duly executed by Violet Swords and properly attested as provided by law and that the same was entitled to be admitted to probate as such, and that the contestant Thomas Williams has failed to prove the allegations in opposition to the probate of the will and that the contest should be dismissed.

Contestant and appellant contends that the will in question was not executed in the manner required by R.C.M. 1947, section 91-107, which is ground for contest. R.C.M. 1947, section 91-901. The attesting witnesses both testified that the decedent did not sign the will in their presence and they further testified that she did not acknowledge that the instrument was her will.

When they signed the paper as witnesses they testified that the paper was folded so that all they could see was the line where they signed as witnesses. They testified that they did not sign in the presence of each other. They went to the home of the decedent at her request to witness the paper but Mr. Neal signed the paper first and then handed the pen to Mrs. Neal and proceeded out of the room as she signed the paper. They testified they did not learn that the instrument which they signed was a will until after Violet Swords had died and after the will was publicly read.

Because of these facts, it is the contention of contestant and appellant that the case is ruled by that of In re Williams' Estate, 50 Mont. 142, 145 Pac. 957. There were similar facts in the Williams' Estate but there were likewise distinguishing features in that case. In the first place the will involved in the Williams' Estate was an unnatural will. It was not prepared by the decedent, but was entirely in the handwriting of a Butte attorney who was not present when the will was executed. The person named as executor, Mr. Harley, was the one who requested the witnesses to sign the instrument, whereas in this case the will was prepared by Mrs. Swords herself and she is the one who requested the witnesses to sign the instrument as witnesses. There were circumstances in the Williams' Estate to indicate that the will in question was that of Mr. Harley or Mr. Davis, the principal beneficiary under the will, rather than of the decedent. The court pointed out in that case that the record did not indicate whether testatrix knew the instrument to be a will. Here unmistakably the will before us was the will of Violet Swords and no one else. The record shows that she prepared the will after procuring a copy of another will to be used as a form. She requested the witnesses to sign and witness the instrument. They did sign it in the presence of Violet Swords, and to all intents and purposes signed it in the presence of each other. The purpose of our statute prescribing the formalities that must be observed in executing a will is to prevent simulated and fraudulent writings from being probated

and used as genuine. In re Noyes' Estate, 40 Mont. 178, 105 Pac. 1013; In re Williams' Estate, supra; In re Braggs' Estate, 106 Mont. 132, 76 Pac. (2d) 57.

There is in this case no question about the genuineness of the instrument which the court admitted to probate as the will of Violet Swords.

The attestation clause at the end of the will was regular in ▇▇ every respect. Opposed to it is the oral testimony of the subscribing witnesses. Their oral testimony directly contradicts the statement contained in the attestation clause. Under the authorities this presents a question for the trier of the facts as to which should prevail, the attestation clause or the sworn testimony of the witnesses.

The attestation clause being regular presents a prima facie ▇▇ case of the due execution of the will which the court is entitled upon a proper showing to hold prevails over the testimony of the witnesses to the contrary. This is particularly true where the experience and familiarity on the part of the testator with the requisites of the execution of a will exist as in this case. 57 Am. Jur., Wills, section 866, page 576, section 909, page 599; 1 Jarman on Wills, 7th Ed., page 109; 1 Redfield on Wills, 4th Ed., section 238, page 233; 88 C.J., Wills, section 798, page 1017. Of the many cases reaching this result throughout the country the following are typical: Massey v. Reynolds, 213 Ala. 178, 104 So. 494; Succession of Beattie, 163 La. 831, 112 So. 802; In re Warren's Estate, 138 Or. 283, 4 Pac. (2d) 635, 79 A.L.R. 389; In re Shapter's Estate, 35 Colo. 578, 85 Pac. 688, 6 L.R.A., N.S., 575; German Evangelical Bethel Church v. Reith, 327 Mo. 1098, 39 S.W. (2d) 1057, 76 A.L.R. 604; Kuehne v. Malach, 286 Ill. 120, 121 N.E. 391; In re Cecala's Estate, 92 Cal. App. (2d) 834, 208 Pac. (2d) 436; In re Braue's Estate, 45 Cal. App. (2d) 502, 114 Pac. (2d) 386; In re Gray's Estate, 75 Cal. App. (2d) 386, 171 Pac. (2d) 113, 116.

In the last cited case the court stated, quoting from In re Estate of Cullberg, 169 Cal. 365, 146 Pac. 888: " 'And so it has generally been held that, under statutes like ours, the declara-

tion by the testator that the document is his will, and his request for its attestation, need not be stated in exact terms, but may be implied from his conduct and the attendant circumstances.' " To the same effect are In re Miller's Estate, 37 Mont. 545, 97 Pac. 935, and In re Choiniere's Estate, 117 Mont. 65, 156 Pac. (2d) 635.

No useful purpose would be served in extending this opinion ▉ by the citation of further authorities, of which there are a great many, in support of the view that the court may accept statements in the attestation clause as against the mere words of the attesting witnesses to the contrary. The reason for the rule is well stated by the court in the Massey case supra [213 Ala. 178, 104 So. 498], where it is said: "When a person writes his name as a witness to a will at the request of the testator and in his presence, under the word 'witness' or other equivalent phrase, as here shown, he impliedly certifies thereby that he saw the testator sign his name to the instrument, or that he saw the name of the testator on it and the testator acknowledged that it was his signature. It will be competent for him to testify to the contrary because the court and jury desire the truth, but the jury or court, sitting as a court and a jury, should consider his contradictory oral evidence with great caution and scan it with grave suspicion; on account of it contradicting his written testimony, it reflects on his (witness') credibility, and it is contrary to the confidence placed in him by the testator."

We agree with the trial court's conclusion which he stated in ▉ his memorandum accompanying his decision that "the court may hear and determine the value of the testimony and weigh the presumptions of regularity against the oral statements of the witnesses on the stand, and make its decision. * * * The Court takes the view that under the presumptions and the evidence and all the circumstances disclosed at the trial, that the preponderance of the evidence lies with the proponent, and that the will should be admitted to probate. One cannot review the evidence in this case without coming to the definite conclusion that Mrs. Swords died with the belief that she had

disposed of her property according to her wishes by a valid will. The right to dispose of one's property by will should not be denied if it is possible to uphold the validity of the will.''

Contestant and appellant contends that if there be a presumption of the due execution of the will from the recitals to that effect in the attestation clause, the presumption is overcome when the witnesses state the contrary. He relies on the case of In re Mickich's Estate, 114 Mont. 258, 136 Pac. (2d) 223, 230. The issue in that case was that of the mental capacity of the testator. Certain language used in the opinion sustains the contention of appellant. However, upon analysis of the opinion in that case, it will be seen that it is only such facts as appear ''satisfactory as evidence'' that cause the presumption to be overcome. The court was careful to point out in that case that it was ''for the court to say whether the proof offered upon a certain point is satisfactory as evidence thereon.''

Since that case was tried to a jury, whether the presumption was overcome by satisfactory evidence to the contrary was a question for the trier of the facts. The offered instruction should have been submitted to the jury. To the extent that the opinion in that case holds otherwise it is overruled. The rule is that a presumption has the effect as evidence and when controverted by positive evidence the issue becomes one for the trier of the facts, Lewis v. New York Life Ins. Co., 113 Mont. 151, 124 Pac. (2d) 579; Renland v. First Nat. Bank, 90 Mont. 424, 4 Pac. (2d) 488, except in those cases where the contrary evidence is so strong and certain as to permit of but one reasonable and rational conclusion. Nichols v. New York Life Ins. Co., 88 Mont. 132, 292 Pac. 253. But says appellant the presumption of the due execution of the will does not arise in this case because the subscribing witnesses did not know that they were signing an attestation clause of a will. He argues that the declaration in the attestation clause was not the declaration of the subscribing witnesses since they testified that they knew not what they were signing. To sustain this contention would leave a will at the

mercy of the subscribing witnesses which, as stated in the Reith case, supra, the law will not do.

It seems unbelievable that Mrs. Swords would prepare her will with the meticulous care used in this case, knowing all the requisites from having actually written the will and the attestation clause, and then effectively nullify what she had done by concealing her purpose to the subscribing witnesses. There were sufficient circumstances in evidence here to warrant the court in reaching the conclusion that the attestation clause admittedly signed by the subscribing witnesses made out a prima facie case justifying the admission of the will to probate and warranting the conclusion that the contrary proof was insufficient to overcome the prima facie case thus made.

Appellant contends that all the evidence in the record may not be considered because of the order in which the proof was presented. The record reveals that proponents of the will offered evidence designed to make out a prima facie case for the admission of the will to probate. This evidence consisted of some 260 typewritten pages and was all the evidence offered by proponent, including testimony from the two subscribing witnesses. Contestant took part in those proceedings by cross-examining the witnesses, interposing objections and otherwise taking part as an adversary. When proponent rested contestant then offered evidence in support of the contest and rested. Proponent offered no further evidence.

In reliance on In re Silver's Estate, 98 Mont. 141, 38 Pac. (2d) 277, In re Williams' Estate, supra, and In re Braggs' Estate, supra, and particularly the case in In re Latour's Estate, 140 Cal. 414, 73 Pac. 1070, 74 Pac. 441, contestant takes the view that it was incumbent upon proponent in rebuttal to again produce the evidence offered to the court upon the hearing designed to make out a prima facie case, and that not having done so the evidence offered by proponent in making out a prima facie case may not be considered in the contest proceeding.

To apply that rule here would be substituting form for substance. It is true that in a will contest the contestant has the

burden of proof and ordinarily should be the one to first submit proof. But where, as here, proponent submitted his proof first and covered the entire field there would be no purpose in going over the same ground a second time.

The judgment is affirmed.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES ANDERSON and BOTTOMLY, concur.

MR. JUSTICE DAVIS, deemed himself disqualified.